(No. 57134.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RANDY RINK, Appellant.

*Opinion filed October 4, 1983.*

G. Joseph Weller, Deputy Defender, of the Office of the State Appellate Defender, of Elgin (Marilyn Martin, of Chicago, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield, and J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko, Deputy Director, and Marshall Stevens, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

This direct appeal from a judgment of the circuit court of Du Page County was brought by the defendant, Randy Rink, under Rule 603 (73 Ill. 2d R. 603). The cir-

cuit court held section 104—28(a) of "An Act to add Sections *** 104—10 through 104—29 to *** the 'Code of Criminal Procedure of 1963' ***" (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—28(a)) (hereafter referred to as the Act) to be unconstitutional. The Act became effective on December 28, 1979, and sets out a comprehensive scheme of procedures for defendants charged with a crime who are unfit to stand trial or to plead. The section held to be invalid established procedures in cases of defendants such as Randy Rink, who, before the effective date of the Act, had been found to be unfit.

The defendant was indicted on December 17, 1970, for the murder of his father, and for aggravated battery upon his mother. On February 10, 1971, he was found by a jury to be mentally unfit to stand trial. Pursuant to the then-effective provisions of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 104—3, repealed by Pub. Act 77—2097, sec. 8—5—1 (eff. Jan. 1, 1973), 1972 Ill. Laws 836), he was committed to the Department of Mental Health for the duration of his condition. He has since been in the custody of that department and its successor, the Department of Mental Health and Developmental Disabilities (hereafter the Department).

As stated, the Act sets out a comprehensive scheme of procedures for criminal defendants who are found unfit to stand trial or to plead. In providing for those defendants who, prior to the effective date of the Act, were found to be unfit, section 104—27 (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—27) requires that, within 180 days of the effective date of the Act, the Department compile a report for the courts as to each unfit defendant in its custody on the effective date of the Act. Section 104—28 (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—28), part (a) of which was the provision held unconstitutional by the circuit court here, provides:

"(a) Upon reviewing the report, the court shall determine whether the defendant has been in the custody of the [Department] for a period of time equal to the length of time that the defendant would have been required to serve, less good time, before becoming eligible for parole or mandatory supervised release had he been convicted of the most serious offense charged and had he received the maximum sentence therefor. *If the court so finds, it shall dismiss the charges against the defendant.* If the defendant has not been committed pursuant to the Mental Health and Developmental Disabilities Code [Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 *et seq.*], the court shall order him discharged or shall order a hearing to be conducted forthwith pursuant to the provisions of the Code.
\*\*\*

(b) If the court finds that a defendant has been in the custody of the [Department] for a period less than that specified in paragraph (a) of this Section, the court shall conduct a hearing \*\*\* to redetermine the issue of the defendant's fitness to stand trial or to plead. If the defendant is fit, the matter shall be set for trial. If the court finds that the defendant is unfit, it shall proceed pursuant to Section 104—20 or 104—23 [which apply to those found unfit under the Act, and which are explained below], provided that a defendant who is still unfit and who has been in the custody of the [Department] for a period of more than one year from the date of the finding of unfitness shall be immediately subject to the provisions of Section 104—23." (Emphasis added.)

Section 104—20 (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—20) provides for periodic hearings to inform the court of the progress of defendants who are undergoing treatment. Section 104—23 (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—23), on the other hand, concerns the defendants who remain unfit one year after the initial finding of unfitness, or about whom the court has determined that there is no substantial probability of attaining fitness within a year of the finding of unfitness.

One of the dispositions provided for in section 104—23 is a "discharge hearing." This hearing may be requested

by the defendant at any time, or by the State where the defendant has remained unfit for a year after the original finding of unfitness or where it has been found that there is no substantial probability that the defendant will attain fitness within a year of the finding of unfitness. The details of the hearing are set out in section 104—25 (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—25). Its purpose is "to determine the sufficiency of the evidence" of the defendant's guilt of the crimes with which he is charged. If the evidence presented at the hearing fails to establish the defendant's guilt beyond a reasonable doubt, or if he is found not guilty by reason of insanity, the court is to enter a judgment of acquittal. If the State sustains its burden, however, the defendant may be remanded for a period of treatment longer than the one-year period from the finding of unfitness provided for in section 104—23. If the State sustains its burden upon a charge of murder, the treatment period may be extended up to five years.

Pursuant to the foregoing provisions, the Department prepared a report on Randy Rink. The report stated that the defendant had been at Chester Mental Health Center for the past nine years. The circuit court of Du Page County then conducted a hearing and determined that the defendant had not been in the custody of the Department for a period of time equal to the length of time that he would have been required to serve, minus good time, before becoming eligible for parole or mandatory supervised release, had the defendant been convicted of murder and received the maximum sentence. Too, the court found that the defendant was still unfit and that there was no substantial probability that he would become fit within a year.

Acting on requests by the defendant and the State, a discharge hearing was held. The court found that the State had proved that the defendant was sane at the time and was guilty of murder beyond a reasonable doubt. The court found, too, that the defendant was in need of treatment,

and the defendant was remanded to Chester Mental Health Center for five years of treatment.

The defendant's motion for a new trial was denied. The defendant then moved that his "sentence" of five years of treatment be reconsidered. The court denied the motion to reconsider and at the same time, without specifying reasons, held that section 104—28(a) was unconstitutional. In holding so, the court appears to have accepted an argument of the State that the provision in the section for dismissal of charges was in violation of the principle of the separation of powers.

The constitutionality of section 104—28(a) is the principal issue here. The State contends that the circuit court correctly held the section unconstitutional, because the section is, in effect, a legislative grant of amnesty that encroaches upon the executive branch's power to pardon. Too, the State says that the section unconstitutionally trespasses upon and interferes with the State's Attorney's power to charge the commission of crimes.

The State's argument is founded on its assumption, which apparently the trial court also acted on, that the dismissal required under the statute is to be a dismissal with prejudice. The State in oral argument before us acknowledged, though, that it would also be reasonable to interpret the section of the Act as providing for dismissal of charges with leave to reinstate. That interpretation would be constitutional, the State says. We judge that section 104—28(a) does, in fact, provide for a dismissal with leave to reinstate.

The fundamental in statutory construction is to ascertain the intention of the legislature and then to give effect to it. (*In re Griffin* (1982), 92 Ill. 2d 48, 52; *People v. Beam* (1979), 74 Ill. 2d 240, 242.) Here, the intent of the legislature is not clear from the language of the Act, which is, of course, the best source for determining legislative intent. (*Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d

208, 211-12; *People v. Brown* (1982), 92 Ill. 2d 248, 255.) The section does not state whether the dismissal is to be with prejudice or with leave to reinstate. In other places in the Act where the legislature mandates the dismissal of charges, it specifies whether the dismissal is with prejudice or with leave to reinstate. Ill. Rev. Stat., 1980 Supp., ch. 38, pars. 104—23(b)(2),(3), 104—25(f)(2).

Attempting to determine the intendment of the legislature in section 104—28(a) by considering it in relation to other provisions of the Act also does not yield an answer. One may speculate that the dismissal called for in section 104—28(a) was to be a final disposition of the charges against those found to have been unfit before the Act became effective. This would not be congruent, though, with the Act's provisions for those found unfit after the effective date of the Act. In the cases of those defendants committed to the Department pursuant to a hearing under the Mental Health and Developmental Disabilities Code, the Act expressly requires that the criminal charges are to be dismissed with leave to reinstate. Ill. Rev. Stat., 1980 Supp., ch. 38, pars. 104—23(b)(3), 104—25(f)(2).

The legislature's intent was manifested, however, through an amendment to the Act, which was approved and became effective on September 24, 1981 ("An Act in relation to the fitness of criminal defendants to stand trial" (Pub. Act 82—577, 1981 Ill. Laws 2883)). In that amendment, the legislature amended section 104—28(a) to provide expressly that the dismissal would be with leave to reinstate. Ill. Rev. Stat. 1981, ch. 38, par. 104—28(a).

An amendment to a statute is an appropriate source for determining the legislative intent. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 543; *People v. Scott* (1974), 57 Ill. 2d 353, 358.) The amendment here was enacted shortly after the circuit court's pronouncement of unconstitutionality. We have held in an analogous situation that if an amendment is enacted soon after there were controversies as to the in-

terpretation of the statute it amends, it is logical and reasonable to regard the amendment as a legislative interpretation of the original statute. (*Gill v. Miller* (1983), 94 Ill. 2d 52, 58, quoting 1A A. Sutherland, Statutory Construction sec. 22.31 (4th ed. 1972).) (Of course, the legislature, after a final judicial interpretation of legislative intent, cannot effect a change in that construction by a later declaration of what it did intend (*In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 203; *Illinois Bell Telephone Co. v. Fair Employment Practices Com.* (1980), 81 Ill. 2d 136, 142; *Roth v. Yackley* (1979), 77 Ill. 2d 423, 428-29).) We are not unmindful that, in general, penal statutes are to be strictly construed in favor of the accused (*People v. Isaacs* (1967), 37 Ill. 2d 205, 215), but "they must not be construed so rigidly as to defeat the intent of the legislature." *People v. Bratcher* (1976), 63 Ill. 2d 534, 543.

As we stated above, the State has no constitutional objection to that construction. There is a suggestion faintly advanced in the State's brief that such an interpretation could nevertheless be invalid as an interference with the State's Attorney's authority to charge the commission of crimes, but there is no merit to such a position. No decision is cited by the State in which a statute was held unconstitutional on that ground. We do not perceive how the statute here would be any more vulnerable in this regard than a statute of limitations or a speedy-trial statute. The circuit court erred in holding the provision to be unconstitutional.

Apart from the question of constitutionality, the defendant has raised several other questions relating to the discharge hearing and the disposition of his cause. As to the hearing, he claims that the evidence was insufficient to show him sane and guilty of the offense beyond a reasonable doubt. The record rejects the claim. The evidence was overwhelming that the defendant stabbed his father to death and injured his mother when she intervened in the

struggle between the defendant and her husband. As to sanity, there was competent, expert testimony that the defendant could not be considered insane on the night of the killing. Moreover, all of the testimony regarding the defendant's behavior on that night, namely testimony by the defendant's mother and police officers, was that the defendant was coherent, able to communicate clearly, and understood what was happening. These witnesses testified that except for the altercation with his father, the cause of which is unknown, the defendant exhibited no unusual behavior on that night. The decision of the finder of fact on the issue of the defendant's sanity will not be reversed unless the determination made is so improbable or unsatisfactory as to raise a reasonable doubt of its correctness. *People v. Carlson* (1980), 79 Ill. 2d 564, 580; *People v. Ward* (1975), 61 Ill. 2d 559, 568.

The defendant claims, too, that there were several evidentiary errors at the hearing. Three of the claims involve statements of the prosecutor in closing argument that the defendant says were misrepresentations of the evidence. While those statements appear to have been legitimate argument and not misrepresentations of evidence, we need not decide the defendant's claims. He did not object to any of the statements and thus waived the questions. By failing to object in a timely manner in the trial court, a defendant waives any irregularities in the argument of the prosecutor (*People v. Lewis* (1981), 88 Ill. 2d 129, 149; *People v. Dukett* (1974), 56 Ill. 2d 432, 442) or errors in the admission of evidence (*People v. Carraro* (1979), 77 Ill. 2d 75, 81; *People v. Linus* (1971), 48 Ill. 2d 349, 354).

Another matter complained of is that the State's expert witness was permitted to state that the defendant's expert's opinion as to sanity was not based upon medically accepted practice. This question, too, was waived. Though the defense objected to the line of questioning, the ground of objection was that the questions focused upon the de-

fense psychiatrist's examination report rather than on the opinion he had given in his testimony at the hearing. It is axiomatic that when a specific objection is made all other grounds of objection are waived. *People v. Williams* (1983), 97 Ill. 2d 252, 288; E. Cleary & M. Graham, Illinois Evidence sec. 103.2, at 6 (3d ed. 1979).

At the conclusion of the hearing, as we have stated, the circuit court found that the State had proved the defendant sane and guilty of murder beyond a reasonable doubt. Both sides agree that the discharge hearing provided for in the concerned section is to be an "innocence only" hearing, that is to say, a proceeding to determine only whether to enter a judgment of acquittal, not to make a determination of guilt. The question of guilt is to be deferred until the defendant is fit to stand trial. This is clear from the language of section 104—25 of the Act. Because the court here, in its judgment, made an express finding of the defendant's guilt, we remand the cause with directions to vacate the finding and to modify the judgment in conformity with the Act.

As a final contention, the defendant says, as he did in his motion to reconsider his "sentence," that considering the years he has been in custody, the five-year term of extended treatment exceeds the maximum term permitted under the Act. Section 104—25(f)(5) of the Act (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—25(f)(5)) provides: "In no event may the treatment period be extended to exceed the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding." The argument is grounded upon a calculation as to when the defendant would have been eligible for parole had he been convicted of murder and sentenced and, apparently, his opinion that parole eligibility marks the maximum allowable term of custody and treatment.

We need not interpret the meaning of section 104—25(f)(5) in this respect. The State, mindful of the due proc-

544

ess concerns regarding the confinement of unfit defendants discussed in *Jackson v. Indiana* (1972), 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845, agrees with the defendant's claim that he has now been in custody for an excessive time under the Act and recommends that he be released and that a hearing be conducted regarding commitment under the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 *et seq.*). Accordingly, we direct the circuit court, on remand, to vacate the order for extended treatment and to enter an order in keeping with the State's suggestion.

For the reasons given, the judgment of the circuit court holding section 104—28(a) of the Act unconstitutional is reversed, and the cause is remanded with the directions set out herein.

*Reversed and remanded,*
*with directions.*