THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER KEYES, Defendant-Appellant.

Second District No. 2—87—0259

Opinion filed November 7, 1988.

WOODWARD, J., dissenting.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan, and J. Patrick Hanley, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Christopher Keyes, entered a plea of guilty in the circuit court of Lake County to the felony offense of driving under the influence of alcohol and, while committing this violation, being involved in a motor vehicle accident which resulted in great bodily harm to Cindy A. Hanna. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(f).) Following a sentencing hearing, defendant was sentenced to a three-year term of imprisonment. Defendant raises various sentencing issues on appeal.

At the time of defendant's guilty plea, the stipulated facts of the offense were that on August 2, 1986, at approximately 6:15 p.m., defendant was the driver of a vehicle which, after failing to stop at a stop sign, collided with a vehicle driven by Arick Hanna in which his wife, Cindy, was a front seat passenger. A subsequent blood-alcohol test revealed defendant's blood-alcohol concentration to be .12. Defendant's license was suspended at the time of the accident. Cindy Hanna suffered severe injuries, including lacerations, two fractured femurs, a fractured ankle, and a fractured pelvis. Cindy was pregnant and a full-size fetus was removed stillborn as a result of trauma caused by the accident.

The presentence investigation (PSI) report introduced at the sentencing hearing further reveals that Cindy Hanna was hospitalized for almost one month, that Cindy will undergo long rehabilitative therapy and will have permanent scarring and injury. Arick Hanna received no serious personal injury, but did suffer the total loss of his vehicle. Two other passengers in the Hanna vehicle suffered serious injury. The PSI report indicates that the physically injured parties incurred substantial medical expenses, some of which are not covered by their

own insurance. Arick Hanna did not have property damage insurance to cover the loss to his vehicle. The PSI report further indicates that all four persons in the Hanna vehicle continue to suffer emotionally from the traumatic incident.

The PSI report also stated that defendant had no prior felony convictions and no juvenile record. He had previously been convicted of several traffic offenses in 1984 and 1985 and his driver's license was suspended. Defendant, who is single, had been steadily employed for the past five years, the last two as a landscaper.

The PSI report further stated that defendant received an evaluation from the Northern Illinois Council on Alcoholism and Substance Abuse (NICASA) on September 4, 1986. According to the PSI report, the evaluation indicated that defendant displayed a regular, moderate drinking pattern and drank to excess on occasion. NICASA recommended a remedial education program in order to encourage defendant to reduce his level of alcohol consumption, which the evaluation termed problematic.

The Lake County Department of Court Services also prepared an intensive probation supervision evaluation. This report stated that defendant does not seem to display the symptoms normally associated with a severe alcohol problem, but also stated that, according to the NICASA evaluation, defendant needs further education concerning alcohol and its effects. The intensive probation supervision evaluation recommended that defendant be placed on intensive probation instead of being sentenced to the penitentiary.

Defendant's sentencing hearing was held on March 17, 1987. The State submitted Cindy and Arick Hanna's written victim impact statements. Defendant's attorney objected to the submission of Arick's statement, but the trial court overruled the objection. Both victim impact statements mentioned the emotional pain and trauma suffered by the couple as a result of the loss of their baby and Cindy's severe physical injuries. Arick's statement also mentioned that he was not going to receive any money from defendant to compensate the couple for Cindy's medical expenses or for the loss of their car. Defendant testified at the sentencing hearing that he asked Cindy Hanna for forgiveness and that he was cooperating with the Hannas' attorney in a civil suit against him.

■ Defendant first contends that the trial court improperly considered the victim impact statement of Arick Hanna because it was not authorized by statute. Under section 6 of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Act) (Ill. Rev. Stat. 1987, ch. 38, par. 1406), victims of violent crimes have the right to

present victim impact statements for consideration at sentencing. Any DUI offense which results in personal injury or death is a violent crime under section 3(c) of the Act (Ill. Rev. Stat. 1987, ch. 38, par. 1403(c)). We must, therefore, determine whether Arick Hanna was a victim as that term is defined in section 3(a) of the Act.

■ Section 3(a) of the Act states, in relevant part, as follows:

" 'Victim' means (1) a person physically injured in this State as a result of a violent crime perpetrated or attempted against that person or (2) a person who suffers injury to or loss of property as a result of a violent crime perpetrated or attempted against that person *** or (4) any person against whom a violent crime has been committed or (5) any person who has suffered personal injury as a result of a violation of section 11—501 of The Illinois Vehicle Code, or of a similar provision of a local ordinance ***." (Ill. Rev. Stat. 1987, ch. 38, par. 1403(a).)

Sections 3(a)(1) and (a)(5) do not apply because there is no evidence in the record that Arick Hanna suffered personal injuries in the accident. Sections 3(a)(2) and (a)(4) only apply if the violent crime in question was perpetrated or committed against Arick Hanna. The offense in question, driving under the influence of alcohol and becoming involved in a motor vehicle accident which causes great bodily harm to another (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(f)), can only be perpetrated against individuals who suffer great bodily harm in the accident. Since Arick Hanna did not suffer great bodily harm in the collision, sections 3(a)(2) and (a)(4) of the Act are inapplicable, and he cannot be considered a victim as that term is defined in the Act.

■ Nevertheless, while Arick Hanna may not have had the right to present this statement on his own under the authority of the Act, the statement was actually offered by the State and was properly a part of the State's presentation of evidence at the sentencing hearing. (See *People v. Estrella* (1988), 170 Ill. App. 3d 292, 294-96, 524 N.E.2d 707; see also *People v. Ellzey* (1988), 173 Ill. App. 3d 509, 511, 527 N.E.2d 1058.) The State may offer relevant evidence at a sentencing hearing in aggravation. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1(a)(3).) Arick Hanna's statement was relevant and reliable. While it may have been objectionable on the basis of hearsay, no such objection was made, as the objection below was that Arick was not a victim, and any hearsay issue not objected to is waived for review. (*People v. Rink* (1983), 97 Ill. 2d 533, 542, 455 N.E.2d 64.) In any event, the statement of Arick Hanna is substantially similar to the recitation in the victim impact analysis portion of the PSI report, and

any possible error in the admission of the separate statement is harmless.

Defendant next maintains that the trial court abused its discretion in denying probation and imposing the maximum three-year sentence because (a) the court's comments indicate a personal bias against alcohol; (b) the court inappropriately considered and emphasized defendant's lack of automobile insurance; and (c) the court failed to give appropriate weight to the factors presented indicating a strong rehabilitative potential.

■ We have reviewed the record of the trial judge's comments at the sentencing hearing and do not find that they indicate he adhered to a policy of denying probation or imposing a maximum sentence where alcohol is involved. Where the record affirmatively shows that the trial judge arbitrarily denied probation because the defendant fell within the trial judge's category of disfavored offenders, a defendant is entitled to a new sentencing hearing. (*People v. Bolyard* (1975), 61 Ill. 2d 583, 587, 338 N.E.2d 168.) The same is true if the trial judge arbitrarily imposed the maximum sentence because a defendant fell within the judge's category of disfavored offenders. *People v. Zemke* (1987), 159 Ill. App. 3d 624, 629, 512 N.E.2d 374.

■ The record in this case clearly reflects that the trial judge held strong opinions about the effect of alcohol upon individuals and society, including, as defendant notes, the effects of low levels of alcohol consumption. The record does not indicate, however, that the trial judge automatically denied probation and imposed the maximum sentence because of these views. The trial judge mentioned the comments in the NICASA evaluation that defendant was a moderate drinker who sometimes drank to excess. The trial judge did not criticize defendant's drinking habits at any time during the sentencing hearing. Instead, he criticized defendant for driving under the influence of alcohol. Furthermore, while some of the trial judge's comments were not relevant to the task of sentencing, the serious and tragic results of defendant's conduct would indicate that some admonishment from the trial court concerning the dangers of alcohol was certainly appropriate. The record does not reflect that the trial judge imposed the maximum sentence because of his personal views about alcohol.

Defendant also argues that the trial judge improperly considered and emphasized defendant's lack of automobile liability insurance in reaching a sentence. The record shows that the trial judge did comment on defendant's lack of insurance and that this fact did indicate to the judge that defendant did not care about persons he might hurt, including himself and his passengers. When defense counsel inter-

jected that defendant was indigent and may not have had insurance because he could not afford it, the trial judge responded that if he could not afford insurance, he also should not be able to afford an automobile.

 █ A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each case. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 268, 497 N.E.2d 1138.) Such a judgment depends upon many relevant factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. (113 Ill. 2d at 268, 497 N.E.2d at 1143.) Here, defendant was driving while his license was suspended and he did not have automobile liability insurance. These factors, coupled with his level of alcohol concentration, indicate a disregard for the well-being of other persons whom he might injure. The fact that defendant drove an automobile without liability insurance, under these circumstances, could reasonably be viewed as irresponsible and showing a lack of concern for the well-being of the public. This is within the court's proper consideration of defendant's character and was not error.

Finally, defendant contends that the trial court failed to give the appropriate weight to the factors presented indicating a strong rehabilitative potential, such as the PSI report recommendation and intensive probation evaluation showing that he was an acceptable candidate for probation or intensive probation, that he had no juvenile or adult criminal convictions, and that he had expressed regret over the incident. The trial judge did state, however, that he had read the PSI report, which mentioned these factors, and these factors were also brought to the court's attention by counsel's arguments.

██ In sentencing a defendant, the trial court is not obligated to recite and assign a value to each fact presented in evidence at the sentencing hearing. (*People v. Halstead* (1987), 164 Ill. App. 3d 1, 8, 517 N.E.2d 667.) If the trial court mentions an aggravating factor or factors, it will be presumed that the court considered any mitigation evidence as well, absent any indication in the record to the contrary, other than the length of the sentence. (*People v. Ulmer* (1987), 158 Ill. App. 3d 148, 151, 510 N.E.2d 1296.) Here, the trial court cited two compelling factors in aggravation: the fact that defendant's actions caused serious harm to others (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(1)) and the need to deter others from committing the same crime (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(7)). As the record contains no indication to the contrary, other than the length of the sentence imposed, we must presume that the trial court consid-

ered the mitigation evidence that was presented.

■ Although the Illinois Constitution requires a trial court to consider a defendant's potential for rehabilitation when it imposes sentence, it does not require the court to give more weight to this factor than to the seriousness of the offense. (*People v. Mack* (1985), 133 Ill. App. 3d 788, 793, 479 N.E.2d 445.) In light of the tragic consequences to the Hanna family and the serious injuries to the passengers in the Hanna vehicle, there can be no question that the offense committed by defendant was very serious. We cannot say that the trial court failed to give adequate weight to defendant's rehabilitative potential when it imposed sentence. The trial judge did not abuse his broad sentencing discretion in the present case. See *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

NASH, J., concurs.

JUSTICE WOODWARD, dissenting:

I respectfully dissent from the majority opinion. It is unquestioned that the defendant's conduct caused serious and extensive personal injuries and the death of an unborn child; however, in spite of the recommendation of the Lake County Department of Court Services that defendant be placed on intensive probation, the court imposed the maximum sentence of three years in the penitentiary. The trial court considered two improper factors in aggravation, *i.e.*, its own standard of legal intoxication and defendant's lack of automobile insurance. An analysis of the court's remarks at the sentencing hearing clearly demonstrates that this case should be remanded to the trial court for resentencing.

Regarding the court's imposition of its own standards for legal intoxication, the following portions of the record are illustrative. After the defendant's attorney argued that defendant exhibited none of the indicia of intoxication at his arrest, the trial judge stated:

> "I'll tell you what my training is, and if I had to write the laws, you know what I would say, *the danger starts at .05. .05.* You know what the most danger is? I'll give you a crash course in alcohol. *.05, .04, .06. 4 to 6* is dangerous. Did you ever see guys at parties where they are busy talking away or trying to hold their head or lean up against the wall, they are on their way to being smashed. *** Secondly, sir, a person that drinks

already forms habits and he educates himself to overcome these things." (Emphasis added.)

Later in the hearing, the trial judge stated that section 11—501(d)(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(d)(3)) was adopted because of motor vehicle accidents resulting from alcohol abuse. He then predicted that the legislature would elevate other traffic offenses from misdemeanor to felony status because of the alcohol abuse problems in our society.

The trial judge next mentioned that cigarette advertisements in which doctors recommended smoking because it would supposedly cause people to relax used to appear in billboards near highways. The trial judge then stated:

"But you don't see those ads anymore about doctors suggesting you smoke because it will cause you to relax, because smoking will kill you. Well it is the same thing with alcohol, except we have a weak society. They try to do away with it, but because of public clamor and the black marketing of making booze up in the hills, and in the privacy of the kitchen, we returned to the use of alcohol. And quite candidly it is abused.

Now I disagree with some of the things that have been said about alcohol. *The sad thing is, our society does not realize that as soon as you lift that first glass to your mouth you are opening the door to danger.* And this is why I frown upon those in the alcohol beverage business who spend hundreds of thousands of dollars for advertising *** to encourage the public to consume and become intoxicated. And perhaps 50 years from now some judge will be making the same type of remark *** about those ads as I made about [the cigarette] ads because I am sure by that time the use of alcohol, hopefully, will diminish because it has affected society to such a point that it is a cancer. It is a sore which is spreading." (Emphasis added.)

Later in the hearing, the trial judge mentioned defendant's lack of automobile insurance and discussed the possible financial consequences to defendant of a DUI conviction. He then returned to the subject of automobile insurance, stating as follows:

"Be it the fault of the legislators, be it the fault of the courts, or be it the fault of some other agency, this State does not make such insurance mandatory. So driving a vehicle, either under the use of alcohol or without the use of alcohol, puts a potent weapon into the hands of that individual who misuses it, or because of negligence is involved in some sort of accident. And the negligence being either by yourself or through a third

party. But you chose not to have any insurance whatsoever. That was a voluntary act by yourself. *And by choosing not to have insurance, it means to me that you don't care about yourself, you don't care about the passengers that may be riding with you. You don't care about the individual who you may hurt or whose car you may damage, or about the public in general. So you are creating the intention in your mind that you are saying I turn my thumb up on society,* and in street corner talk, you say it in a little more stronger [*sic*] type of verbiage." (Emphasis added.)

At this point, the assistant public defender representing defendant stated that a finding of indigency had been made by the court and that it was possible defendant did not have insurance because he could not afford it. The trial judge then made the following statement:

"Well, sir, if he cannot afford insurance, that doesn't give him the right to drive. Let me be a little more blunt. *If he cannot afford insurance, he should not be able to afford to drive.* He should not be able to afford that automobile." (Emphasis added.)

The trial judge then analogized driving under the influence of alcohol to playing with a loaded gun. He stated as follows:

"When you had that car, when you were driving around without the use of any alcohol, the gun was unloaded. But as soon as you started using alcohol, you loaded the gun. And by loading the gun, driving that car when you were under the influence of alcohol, and here it was .12 of one percent. And by taking this uninsured car, you were using that car as a potent weapon to toy around with a life either by some form of injury or by some fatality. *** As soon as you went through that stop sign you released the trigger on that gun. And the impact of that gun was the bullet landing into the Hanna vehicle, or the *uninsured* car that you were driving, going through and hitting the Hanna car." (Emphasis added.)

It is clear that the trial court considered defendant's sentence in light of improper factors. The court's view that "the danger (related to alcohol) starts at .05" does not comport with Illinois law, which defines the .10 level as legally significant. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1).) Under the trial court's "standard" of .05, the malfeasance of defendant, whose blood-alcohol concentration registered .12, is wrongly magnified.

Further, we note, at the time of the instant offense, automobile

insurance was not mandatory. The trial judge stated that defendant's lack of insurance meant he did not care about his passengers or the public in general and that defendant was "turning [his] thumb up on society." The trial judge clearly considered the lack of insurance to be an aggravating factor, not merely the absence of a mitigating factor. As the lack of automobile insurance is not one of the statutory factors set forth in section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2), the court improperly considered this in deciding the sentence.

Neither of the above-discussed factors should have entered into the court's determination of this sentence, but clearly both affected its length. Therefore, this sentence should be vacated, and this case should be remanded for resentencing.