THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MACEO WILLIS, Defendant-Appellant.

First District (3rd Division)   No. 1—86—2301

Opinion filed June 21, 1989.

Randolph N. Stone, Public Defender, of Chicago (Mark Stein, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Patricia Y. Brown, and Elissa Rhee-Lee, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Following a jury trial, defendant, Maceo Willis, was found guilty of the unlawful restraint, kidnaping, aggravated kidnaping, and aggravated criminal sexual assault of Latanya Whitfield and was sentenced to an extended term of 60 years' imprisonment for aggravated criminal sexual assault and an extended term of 30 years' imprisonment for aggravated kidnaping. Defendant appeals both his conviction and sentence. He maintains that: (1) he was denied a fair trial because the circuit court allowed the State's Attorney to introduce evidence of other crimes; (2) the instruction that the circuit court gave to the jury regarding other-crimes evidence did not adequately define the purpose for which the jury could consider the evidence; (3) the State's Attorney misstated the law regarding the use of other-crimes evidence; (4) the circuit court improperly considered victim impact statements made by Latanya Whitfield and Susan Hatcher in imposing sentence; (5) he was improperly sentenced on four counts of aggravated criminal sexual assault even though there was only one act of aggravated criminal sexual assault; and (6) he was improperly sentenced to an extended term of 30 years' imprisonment for aggravated kidnaping. For the reasons stated below, we affirm defendant's conviction of aggravated criminal sexual assault and aggravated kidnaping, and the sentence imposed by the circuit court for aggravated criminal sexual assault. However, we reduce the sentence imposed by the court for aggravated kidnaping.

A summary of the evidence adduced at trial follows.

At 4 p.m. on Saturday, November 10, 1984, Latanya Whitfield was in front of her home at 5818 S. Bishop in Chicago. She heard a noise, turned, and saw defendant standing four feet away. Defendant was holding a black gun, with a four-inch barrel. He said to her "I need your help." She asked him if he wanted her purse. He said "No." He then told her "This is a .38. You move, I'll kill you." He instructed her not to look at him and made her walk to an abandoned building about one minute away. He forced her down the stairs of the building and pushed her to her knees. He then pulled her to her feet and told her to remove her clothes. When she refused to do so, he hit her twice in the neck. Again, he ordered her to remove her clothes. She pulled down her blue jeans and her panties. He picked her up and sat her on a stump 2½ feet high. He told her to open her legs and hit her knees when she refused. She then opened her legs but he told her to open them wider. She told him that she could not. He then pulled her legs open. He told her not to move and to stop crying. He unzipped his pants, placed his penis in her vagina, and ejaculated. He

fixed his pants, told her not to move, and left.

Latanya was taken to St. Bernard's Hospital, where she was examined by a doctor and vaginal specimens were collected. Latanya described her assailant to the police as a tall, heavily built, dark-skinned black, in his thirties, with a beard and sideburns, wearing black pants, a black leather jacket which came down to his thighs, a black knit hat, and black sunglasses. On February 11, 1985, Latanya viewed a lineup of five black men and identified defendant. She testified at trial that she identified defendant because she recognized his face, and not because of his coat or his hat.

Rick Roberts testified that on April 1, 1985, he was assigned to the serology unit of the Chicago police department crime laboratory. He received a Vitullo evidence collection kit for Latanya Whitfield which was prepared at the hospital emergency room. He examined the vaginal specimens and found that they were positive for the presence of spermatozoa.

It was stipulated that Dr. Schaeffer of St. Bernard's Hospital collected sperm swabs from Latanya Whitfield. He placed the swabs in a container which he then sealed. The swabs were delivered to the crime laboratory and remained in the sealed container until the container was opened by Rick Roberts.

Sharon Lee testified that she worked at Sola Electric from 1982 until 1985. Defendant also worked at Sola Electric during this time period. Defendant wore hats, dark sunglasses and a three-quarter-length black leather coat to work. During the period from October 1984 until February 1985, defendant did not have any hair and wore hats, including tight-fitting knit hats. Defendant had a beard and sideburns and periodically varied the length of the beard. On cross-examination, Sharon testified that Sola Electric employs over 200 employees, and she did not work in the same room as defendant.

Susan Hatcher testified that she lives at 6833 S. Lafflin in Chicago. At 11:45 p.m. on Saturday, October 6, 1984, she was returning home from a party where she had had one glass of wine to drink. She was carrying a bookbag containing her purse and a knife. She was four houses away from her home when she saw defendant come out of an alley on the east side of the street, cross the street and enter the alley on the west side of the street. She stopped under the streetlight near the alley on the east side of the street to search for her knife. Defendant came up to her and told her not to look at him. He grabbed her arm when she started to run. He had a dark gun with a three- or four-inch barrel in his hand. He told her that she could not outrun a .45 caliber and forced her to walk through various alleys to a

garage at 67th and Bishop. The garage did not have a door and was illuminated by a light in the alley. Defendant pointed the gun at her stomach and told her to take off her clothes and throw them on the floor. After she complied with his order, he removed his sunglasses for a second and looked at her body. He then replaced his sunglasses and asked her why he should not kill her. She told him that she had a baby to take care of. He then forced her to lie down, he unbuttoned his pants, and took down his jocks. He placed his hand in her vagina and told her he was looking for a weapon. He then penetrated her vagina with his penis and ejaculated. After the act of intercourse, he asked her if she had any money. She lied and told him that she did not have any. He did not search her bookbag for the money. He told her that he should kill her and she begged him not to. He then left and went back to the alley.

Susan contacted the police two days after the incident. She described her assailant as a dark-skinned black male in his thirties, 6 feet 1 inch tall, 180 to 190 pounds, with a full beard, sideburns and a moustache, wearing a black knit skull cap, a three-quarter-length leather jacket, khaki pants, boots, and dark sunglasses. On February 11, 1985, Susan viewed a lineup of five black men and identified defendant. On cross-examination, Susan testified that she was told in late October 1984 that she has a cataract in her left eye. However, she can see despite the cataract.

Kathy Chatman testified that on February 9, 1985, she lived at 5533 S. Peoria in Chicago. She was returning home from work at 11 p.m. when she saw a man running toward her. She ran into her backyard, fell on the stairs leading to the back door, looked back and saw the man standing by the stairs. He had his hands outstretched in front of his body and he said something that she did not hear. She then screamed for her mother, who came to the back door along with Kathy's brother-in-law.

Kathy described the man who ran after her as a black man, 6 feet tall, wearing a three-quarter-length leather jacket. On February 11, 1985, Kathy viewed a lineup of five black men. She did not identify defendant positively.

Wilbur Brent is Kathy Chatman's brother-in-law. On February 9, 1985, he was at home at 5533 S. Peoria. At approximately 11 p.m. he heard a scream coming from the back porch. He ran out of the house and saw defendant standing by the back fence. Defendant started running and Brent chased him to Peoria street. He was three feet away from defendant when defendant turned to him and said "Don't come no farther or I'll blow you away." Wilbur testified that he did

not see a gun in defendant's hands. However, he gave up the chase.

Wilbur described the man that he chased as a black man, in his thirties, 6 feet 1 inch tall, 180 to 200 pounds, with a beard and a moustache, wearing a black leather coat which came down below his hips and a black skull cap. He identified defendant in a lineup on February 11, 1985.

William Chatman, Kathy's father, testified that he was home on February 9, 1985. At approximately 11 p.m., Kathy came into the house, screaming that a man was chasing her. He went outside and saw Wilbur Brent chasing defendant. Wilbur stopped at the corner of 55th and Peoria. William, however, continued the chase. He saw defendant run toward a car. He positioned himself in front of the car. Defendant entered the car and drove toward him. He moved out of the way and noted the car's license plate number.

William described defendant to the police as a black man, 6 feet 1 inch tall, 180 to 200 pounds, with a beard and moustache, wearing a dark-colored, three-quarter-length leather or vinyl jacket, and a dark skull cap. He later identified defendant in a lineup.

Officer Ernest Bell of the Chicago police department testified that William Chatman gave him defendant's license plate number. He traced the car to defendant, contacted him at Sola Electric and transported him to the police station. Defendant was wearing a three-quarter-length leather jacket at the time of his arrest. On February 11, 1985, defendant participated in a lineup and was identified by Wilbur Brent, Susan Hatcher and Latanya Whitfield.

Delores Pastrana and Robert Wilkins, friends and co-workers of defendant, testified that defendant has a very good reputation at Sola Electric. Mary Williams, defendant's common law wife, testified that defendant is not a violent person. She further testified that defendant never wears skull caps.

Defendant testified that in March 1981, he was released from prison, where he had served time for the rapes of five women. From 1982 until the day of his arrest, he lived with Mary Williams and her four children in Mount Prospect. However, he visited his parents at 10231 S. Wallace in Chicago almost every Saturday. Defendant testified that he does not own any skull caps or a three-quarter-length leather coat and he denied raping Latanya Whitfield or Susan Hatcher.

Defendant further testified that on February 9, 1985, he was driving around Halsted and 55th when he thought he saw someone he knew. He called her name, waited for traffic to clear and turned in the direction she was walking. When she saw him turn, she ran down

the street and cut across an empty lot. He went down an alley and stopped his car. He exited his car and went across the street to see if he could see her. He then saw a group of men approaching from his left. He got in his car and left.

On cross-examination, defendant testified that, on the day of his arrest, he was wearing a black leather jacket which reached to the top of his leg. He also testified that he is a marksman but he does not own a gun.

## DISCUSSION

### TESTIMONY OF SUSAN HATCHER

Prior to trial, defendant made a motion *in limine* to bar the testimony of Susan Hatcher. The circuit court found several factors common to the rape of Susan Hatcher and the rape of Latanya Whitfield. The court believed that these factors were indications of *modus operandi* and allowed the testimony of Susan Hatcher for purposes of identification. On appeal, defendant maintains that the circuit court erred in allowing Susan Hatcher to testify. We disagree.

■■ ■ It is well settled that evidence of the commission of other crimes is admissible when such evidence is relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*People v. Phillips* (1989), 127 Ill. 2d 499; *People v. Bartall* (1983), 98 Ill. 2d 294, 310, 456 N.E.2d 59; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.) It is also well settled that while similarity is essential to admittance of evidence of other crimes, the test is not one of exact, rigorous identity. (*People v. Phillips*, 127 Ill. 2d at 520-21; *People v. Richardson* (1988), 123 Ill. 2d 322, 339, 528 N.E.2d 612.) Furthermore, the decision to admit evidence of other crimes is within the sound discretion of the trial court, and its determination will not be disturbed on review absent abuse of discretion. *People v. Fuller* (1983), 117 Ill. App. 3d 1026, 1036, 454 N.E.2d 334; *People v. Anderson* (1982), 108 Ill. App. 3d 563, 570, 439 N.E.2d 65.

■ On review of the record, we find that the similarities were sufficient to warrant admission of Susan Hatcher's testimony at trial. Susan was attacked as she returned home alone late on a Saturday evening, Latanya was attacked as she returned home alone late on a Saturday afternoon. In each instance, the assailant used a black handgun. Each woman was told the caliber of the gun and that she would be shot if she attempted to escape. Each woman was also told not to look at the assailant. Latanya was forced to walk to an abandoned

building, and Susan was forced to walk to an abandoned garage. Neither woman was robbed even though Latanya offered her purse to the assailant and Susan had money in her bookbag. In each instance, the assailant wore a three-quarter-length leather jacket, a black knit hat and dark sunglasses. Latanya and Susan gave similar descriptions of the assailant to the police and identified defendant in a lineup. Lastly, the rapes took place within a five-week period and within a 10-block area on the south side of Chicago.

Defendant asserts that in order to establish *modus operandi* there must be "factors of a distinctive nature to earmark the crime as the handwork of one man." He argues that the rapes of Latanya Whitfield and Susan Hatcher were not so distinctive as to earmark them as the work of one person. In *People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470, the Illinois Supreme Court noted that distinctive links could be found with evidence which indicated that a defendant was "using similar weapons, dressing the same, acting with the same number of people, or even [using] a distinctive method of committing this particular offense." (*People v. Tate*, 87 Ill. 2d at 142.) Also, in *People v. Phillips* (127 Ill. 2d at 522), the court noted that the list given in *People v. Tate* was "not meant to be all-inclusive or limiting on the trial court's weighing and balancing of similarities and dissimilarities." In the instant case, the record amply supports the circuit court's opinion that there were distinct areas of similarities between the rapes of Susan Hatcher and Latanya Whitfield.

■ Defendant next argues that Susan Hatcher's testimony was not probative of any fact in issue, and was, therefore, inadmissible. As noted above, it is within the sound discretion of the trial judge to determine whether the evidence of other crimes is relevant to a material issue and whether the probative value of such evidence outweighs its prejudicial impact. (*People v. Fuller*, 117 Ill. App. 3d at 1036.) The circuit court determined that Susan Hatcher's testimony was relevant to the issue of the identity of Latanya Whitfield's assailant. Upon review of the record, we cannot conclude that the circuit court abused its discretion. See *People v. Richardson*, 123 Ill. 2d at 339; *People v. Pavic* (1982), 104 Ill. App. 3d 436, 442, 432 N.E.2d 1074, *overruled on other grounds People v. Pettit* (1984), 101 Ill. 2d 313; *People v. Carter* (1981), 98 Ill. App. 3d 720, 723, 424 N.E.2d 367.

TESTIMONY OF CHATMANS AND BRENT

■ Defendant maintains that the circuit court erred in allowing Kathy Chatman, William Chatman and Wilbur Brent to testify at trial. However, defendant failed to object to the testimony at trial.

Also, defendant failed to raise this issue in his motion for a new trial. In order to preserve an issue for review, a defendant must make an objection at trial and must raise the issue in the motion for a new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, *cert. denied* (1988), ____ U.S. ____, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Accordingly, defendant has waived any alleged error regarding the admission of the testimony of the Chatmans and Brent.

■ We are also of the opinion that review is not required under the plain error doctrine because the evidence of defendant's guilt was overwhelming. (*People v. Enoch*, 122 Ill. 2d at 198.) The record shows that defendant transported Latanya Whitfield to an abandoned building at gunpoint. He there forced her to have sexual intercourse with him. Latanya testified that she was able to observe defendant's face on several occasions. She described defendant to the police and identified him in a lineup. There was also testimony regarding the presence of spermatozoa in vaginal specimens taken from Latanya. Additionally, the testimony of Susan Hatcher was probative of the identity of Latanya's assailant.

JURY INSTRUCTION

Defendant maintains that the jury was not properly instructed on the use of other-crimes evidence.[1] He argues that the instruction given to the jury failed to "distinguish between the relevance of *modus operandi* as it bears on identity and the impermissible supposition of propensity." He claims that "[i]nstead of weighing whether or not the method of working was so similar that one man committed both crimes, or [*sic*] juror would merely think that if the defendant attacked Ms. Hatcher he probably attacked Ms. Whitfield too."

■ Initially, we note that defendant did not object to the instruction and failed to raise the alleged error in his motion for a new trial. Thus, defendant has waived the alleged error. (*People v. Richardson*, 123 Ill. 2d at 344-45.) However, defendant argues that he was denied a fair trial because of the use of the instruction, and we will review the issue on appeal.

In *People v. Richardson*, the defendant argued that Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981) (hereinafter

---

[1]The jury was instructed as follows:
"Evidence has been received that the defendant has been involved in offenses other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's identification. This evidence may be considered by you only for the limited purpose for which it was received." Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981).

IPI Criminal 2d No. 3.14), which had been given to the jury, "improperly assumed the probative value" of other-crimes evidence and "thereby precluded the jury from determining the probative value of crucial evidence." The defendant argued that the jury should have been instructed to compare the characteristics of the other-crimes and the crime for which he was being tried and instructed to "determine whether the offenses were sufficiently similar to permit a reciprocal inference of identity." The Illinois Supreme Court rejected this argument. The court noted that, in addition to IPI Criminal 2d No. 3.14, the jury had been instructed to determine the weight to be given to the testimony of each witness. (Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981).) The court observed that "[t]he duty to evaluate the weight and credibility of the testimony of each witness includes the duty to evaluate the weight and credibility of the identification testimony." (*People v. Richardson*, 123 Ill. 2d at 345.) Viewing these instructions together, the court found that "the jury was properly instructed regarding the other-crimes evidence; there most certainly was not a substantial defect by which defendant was denied due process." *People v. Richardson*, 123 Ill. 2d at 345.

■ In the present case, the jury was also instructed to evaluate the weight and credibility of the testimony of each witness. Thus, the jury was entrusted with the duty to evaluate the weight and credibility of the identification testimony. There is no evidence that the jury failed to evaluate the weight and credibility of the other-crimes testimony. Nor is there any evidence that the jury assumed that since defendant attacked Susan Hatcher he probably attacked Latanya Whitfield. Therefore, we are of the opinion that defendant was not denied a fair trial.

PROSECUTOR'S COMMENT

■ During closing argument, the State's Attorney remarked:
"[E]vidence has been received that the Defendant has been involved in offenses other than that charged in the Indictment. This evidence has been received solely on the issue of the Defendant's identification.
\*\*\*
This evidence may be considered by you only for the limited purpose for which it was received. Now, that's referring to the incident involving Susan Hatcher and Kathy Chatman. Okay. You're not going to receive verdicts to decide guilt or innocence on those two cases. All you're going to do is take the information you have received, the circumstances surrounding those in-

cidents, and use those to determine whether or not on the night of November 10th, of 1984, this guy was the one who raped Latanya Whitfield."

Defendant suggests that the State's Attorney was asking the jury to convict on the basis of propensity to commit crimes. According to defendant, the State's Attorney told "the jury that if defendant committed those crimes he probably committed [the crimes for which defendant was on trial] too." To the contrary, we believe that the State's Attorney was cautioning the jury to use the other-crimes testimony only for purposes of identification. The State's Attorney was not implying that the jury should convict defendant because defendant had a propensity to commit crimes.

Even if we assume that the State's Attorney's remark was error, we believe that the error was cured by the circuit court when it gave IPI Criminal 2d No. 3.14 to the jury. The jury was instructed to use the other-crimes testimony solely on the issue of the defendant's identification.

VICTIM IMPACT STATEMENTS

Latanya Whitfield and Susan Hatcher prepared victim impact statements which were submitted to the circuit court by the State's Attorney at the sentencing hearing. Defendant maintains that the circuit court should not have considered the statements in imposing sentence because: (1) Susan Hatcher was not a "victim" and did not have the right to make a victim impact statement; (2) Latanya Whitfield and Susan Hatcher were not present at the hearing and were not subject to cross-examination; and (3) the victim impact statement prepared by Susan Hatcher was irrelevant.

■ Initially, we note that defendant did not object to the introduction of the statements at the sentencing hearing and failed to raise the issue in his motion for a new trial. Therefore, defendant has waived the issue for review. (*People v. Israel* (1989), 181 Ill. App. 3d 851; *People v. Lewis* (1988), 165 Ill. App. 3d 97, 111, 518 N.E.2d 741.) However, defendant claims that he was denied a fair sentencing hearing because of the introduction of the statements, and we will review the issue on the merits.

Section 6 of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Ill. Rev. Stat. 1985, ch. 38, par. 1406) provides:

"In any case where a defendant has been convicted of a violent crime *** and a victim of the violent crime is present in the courtroom at the time of the sentencing or the disposition hearing, the victim upon his or her request shall have the right to

address the court regarding the impact which the defendant's criminal conduct *** has had upon the victim."

Defendant was not convicted for any crime committed against Susan Hatcher. Consequently, Susan Hatcher did not have a statutory right to present a victim impact statement to the circuit court. Moreover, Susan Hatcher was not present at the sentencing hearing, and the record does not contain any indication that she asked the court to consider her statement.

Nevertheless, while Susan Hatcher was not entitled by statute to present the statement to the court, the State did have the right to submit the statement to the court pursuant to section 5—4—1(a)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(a)(3)). That section provides that the court shall "consider evidence and information offered by the parties in aggravation and mitigation." Susan Hatcher's statement was offered by the State and was a part of the State's presentation of evidence in aggravation. (*People v. Keyes* (1988), 175 Ill. App. 3d 1013, 1017, 530 N.E.2d 708; see also *People v. Estrella* (1988), 170 Ill. App. 3d 292, 294-96, 524 N.E.2d 707.) The statement was relevant to sentencing as it related to defendant's criminal history. (*People v. Richardson*, 123 Ill. 2d at 362; *People v. Wallace* (1986), 145 Ill. App. 3d 247, 254, 495 N.E.2d 665 (in sentencing hearing for aggravated criminal sexual assault of complainant, the trial court could properly consider evidence that defendant would have sexually assaulted another woman if he had been able to enter her house).) The statement was also reliable since Ms. Hatcher prepared the statement and had firsthand knowledge of the information contained therein. See *People v. Wallace* (1988), 170 Ill. App. 3d 329, 332-33, 425 N.E.2d 677.

Section 5—4—1(a)(6) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1) provides that at the sentencing hearing the court shall:

> "(6) afford the victim of a violent crime *** the opportunity to make a statement concerning the impact on the victim and to offer evidence in aggravation or mitigation ***. Any sworn testimony offered by the victim is subject to the defendant's right to cross-examine."

Defendant maintains that this section supports his contention that he had a right to cross-examine Latanya Whitfield and Susan Hatcher at the sentencing hearing. We disagree. Section 5—4—1(a)(6) affords the victim of a crime the right to make a statement to the trial court if the victim so desires. However, the section does not apply to evidence that is presented by the State at the sentencing hearing. (*People v.*

*Keyes*, 175 Ill. App. 3d at 1017.) Where a victim impact statement is submitted to the court by the State's Attorney at the sentencing hearing, it is considered to be a part of the State's presentation of evidence in aggravation. (*People v. Keyes*, 175 Ill. App. 3d at 1017.) The statements prepared by Latanya Whitfield and Susan Hatcher were relevant and reliable and could have been considered by the circuit court in imposing sentence. See *People v. Keyes*, 175 Ill. App. 3d at 1017; *People v. Wallace*, 170 Ill. App. 3d at 332-34 (victim need not be present before a sentencing court can consider the impact on her as presented in the form of a written statement); see also *People v. Israel*, 181 Ill. App. 3d 851 (prosecutor was allowed to read victim impact statement into the record).

SENTENCING—AGGRAVATED CRIMINAL SEXUAL ASSAULT

The mittimus contains the following provision:

> "Honorable Robert L. Sklodowski, sentence the defendant to a term of 60 yrs on the counts 1, 5, 11, & 12 Aggravated Criminal Sexual Assault (extended term) ***."

Defendant relies upon the mittimus in support of his contention that the circuit court mistakenly believed he was guilty of four counts of aggravated criminal sexual assault, and, consequently, imposed a longer sentence.

■■ ■ It is established that a mittimus is not part of the common law record. (*People v. Anderson* (1950), 407 Ill. 503, 505, 95 N.E.2d 366; *People v. Mays* (1988), 176 Ill. App. 3d 1027, 1043, 532 N.E.2d 843.) Thus, defendant cannot predicate any assignment of error upon the mittimus. (*People v. Allen* (1971), 1 Ill. App. 3d 197, 272 N.E.2d 296.) However, even if the mittimus were considered a part of the record, it would be of no avail to defendant. The judgment of the court is the authority for the detention of a prisoner, and it is the rule that in case of variance between the language of commitment and the judgment, the latter will prevail. (*People v. Anderson*, 407 Ill. at 505; *People v. Mays*, 176 Ill. App. 3d at 1043; *People v. Miles* (1983), 117 Ill. App. 3d 257, 259, 453 N.E.2d 68.) The circuit judge indicated that he was sentencing defendant on only one count of aggravated criminal sexual assault. The court stated:

> "Therefore, for the protection of the public, due to the wilfull [sic] and wanton, heinous nature of your crimes, the other aggravating circumstances presented at this hearing, and due to your past criminal history I hereby sentence you to sixty years, Department of Corrections, the extended term sentence on your conviction for the aggravated criminal sexual assault, and

thirty years extended terms sentence on the aggravated kidnapping charge, concurrent with each other. Credit for any and all time served thus far.

All other charges and judgments entered on the record will be merged therein."

The language of the court prevails over the language of the mittimus. The mittimus will be amended to reflect conviction and sentencing on only one count of aggravated criminal sexual assault. See *People v. Ammons* (1983), 120 Ill. App. 3d 855, 458 N.E.2d 1031; *People v. Nard* (1975), 32 Ill. App. 3d 634, 335 N.E.2d 790.

SENTENCING—AGGRAVATED KIDNAPING

The State concedes that it was error to sentence defendant to an extended-term sentence of 30 years for aggravated kidnaping, a Class 1 felony,[2] when defendant had been convicted of a greater offense, the Class X felony of aggravated criminal sexual assault. (*People v. Jordan* (1984), 103 Ill. 2d 192, 206, 469 N.E.2d 569.) Accordingly, we reduce defendant's sentence of 30 years for aggravated kidnaping to 15 years, the maximum sentence permissible without imposition of an extended term. Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1; *People v. Jordan*, 103 Ill. 2d at 215; *People v. Knight* (1985), 139 Ill. App. 3d 188, 196, 486 N.E.2d 1356, *cert. denied* (1987), 480 U.S. 905, 94 L. Ed. 2d 518, 107 S. Ct. 1346.

CONCLUSION

For the aforementioned reasons, we affirm defendant's conviction for aggravated criminal sexual assault and aggravated kidnaping. We affirm defendant's sentence of 60 years for aggravated criminal sexual assault, and we reduce defendant's sentence for aggravated kidnaping to 15 years. The mittimus is to be corrected as set forth herein.

Affirmed as modified.

FREEMAN, P.J., and RIZZI, J., concur.

---

[2]Aggravated kidnaping other than for ransom is a Class 1 felony. Ill. Rev. Stat. 1985, ch. 38, par. 10—2.