THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEROY McGEE, Defendant-Appellant.

Second District   No. 2—89—1164

Opinion filed December 4, 1991.

G. Joseph Weller and Beth Katz, both of State Appellate Defender's Office, of Elgin, and Michael J. Pelletier and Ann C. McCallister, both of State Appellate Defender's Office, of Chicago, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Leroy McGee, was convicted of one count of unlawful delivery of between 15 and 100 grams of a substance containing co-

caine (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)) and two counts of unlawful delivery of less than 15 grams of a substance containing cocaine (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2)). He was sentenced to a 16-year term of imprisonment for the largest delivery and to four-year terms for each of the smaller deliveries with all sentences running concurrently. On appeal, defendant contends that he received ineffective assistance of counsel because his attorney attempted to raise an entrapment defense which was doomed to failure and did not present any closing argument after the trial court rejected his proffered entrapment instructions. Defendant also argues that his 16-year sentence was excessive given his lack of a prior criminal record. We affirm.

The charges against defendant arose from a series of transactions involving Robert Whipple, an undercover agent. Whipple testified that on September 6, 1988, he went to a store in Freeport called the "Wooden U" with another agent, Pat Carney, to speak with a man named Ken Webermeier about a possible drug purchase. Webermeier was remodeling the store at the time. Whipple asked if Webermeier could find some cocaine for him. Webermeier then introduced Whipple to defendant and told defendant to get the cocaine. Whipple gave defendant $280 for one-eighth of an ounce of cocaine. Defendant left the store and returned with the cocaine after a short time. He handed the packet of cocaine to Whipple, who put it in his pocket and left the store.

Whipple subsequently spoke to defendant on the telephone and arranged to meet him at a bar in Freeport on October 19, 1988, to discuss buying more cocaine. A second undercover agent, Ron Vandergrift, also went to this meeting. While at the bar, Whipple asked if he could buy between four and six ounces. Defendant stated that he could arrange for Whipple to buy six ounces. Whipple stated that he would like to first purchase some smaller amounts to check the quality. That night Whipple purchased an eighth of an ounce of cocaine from defendant for $300 and one-sixteenth of an ounce for $100.

Shortly after the above meeting Whipple and defendant again spoke on the telephone. They arranged to meet in a bank parking lot on November 4, 1988. When they met defendant told Whipple that he had two sources who were willing to sell him five ounces of cocaine. Only one of these sources was willing to deal directly with Whipple. Whipple stated that he would make the purchase from that source at a price of $1,400 per ounce.

Defendant and Whipple left the parking lot in defendant's car. They picked up a man named Manuel Favela, who was to sell the co-

caine to Whipple. Defendant told Favela that Whipple had the money and it was all right to do business with him. Favela did not have the cocaine with him at the time. He arranged to meet them that evening in a community college parking lot to deliver the cocaine.

Defendant and Whipple then went to a bar where they met Agent Vandergrift. Defendant asked if he could have a small portion of the cocaine that Whipple was to obtain from Favela in return for setting up the transaction. Whipple gave him $200 instead. Whipple and defendant eventually left the bar and drove to the college parking lot to meet Favela. While driving to the lot defendant suggested that he and Whipple jointly purchase a kilo of cocaine with defendant selling his portion of the kilo in the Freeport area.

When they arrived at the parking lot, Favela told Whipple to leave the money on the floorboard of defendant's car and to retrieve the cocaine from Favela's car. Whipple did so and signaled other agents to initiate arrests. Agent Vandergrift testified that he searched Favela and found the roll of money that Whipple had placed on the floorboard of defendant's car. Vandergrift also searched defendant and found the two $100 bills that Whipple had given to him. Additionally, Vandergrift corroborated Whipple's testimony concerning many details of the October 19 and November 4 cocaine transactions.

After the State rested defendant's attorney presented his opening argument. He stated that defendant would testify and admit to participating in the alleged cocaine transactions. Defendant would claim that the government entrapped him into committing the alleged offenses by preying upon his cocaine addiction.

Defendant subsequently testified as follows. As of September 1988, he spent $300 to $400 per week on cocaine. He had been addicted to the drug since 1984. At the time of the drug transactions in question, defendant was employed as a handyman for Ken Webermeier. They were remodeling the Wooden U store on September 6, 1988, when Agent Whipple and another man came in to speak with Webermeier. Defendant was working on the second floor of the store at the time.

According to defendant, Webermeier went upstairs and asked if defendant could obtain cocaine for two friends of his who were downstairs. Defendant stated that he would try even though he was not sure where to get it. When he went downstairs, the men asked what the price would be. Defendant said he was not sure but he thought it would be around $280. Defendant left after the others gave him the money. He was able to purchase the cocaine at the second place he went to. When he returned with the cocaine, Whipple gave him a line

of cocaine for obtaining the substance. Defendant testified that he and Whipple then both snorted a line of cocaine at the store. Defendant obtained the drugs because he was hoping to get some free cocaine out of the deal.

Defendant further testified that when he agreed to make the second drug purchase Whipple agreed to give him some of the cocaine. After defendant brought the cocaine to Whipple he shaved off a piece and gave it to defendant. Whipple and defendant then snorted some of the cocaine. Defendant stated that he tried to convince Whipple to agree to give him some cocaine in return for arranging the final transaction but Whipple insisted upon giving him money instead. Defendant testified further that prior to September 6, 1988, he had never obtained cocaine for anyone.

Ken Webermeier testified that on September 6, 1988, he did some lines of cocaine with defendant and Whipple after defendant returned to the Wooden U with the drugs. On rebuttal, Agent Carney testified that he was at the Wooden U with Agent Whipple on September 6 and that Whipple did not use any cocaine. Agent Whipple also testified that he never used cocaine with defendant.

At the instructions conference following the close of the evidence, defendant's attorney sought to have the jury instructed about the defense of entrapment. The trial judge refused to do so because he felt the evidence clearly showed that defendant was predisposed to commit the alleged offenses. When defendant's attorney was called upon to present closing argument, he stated, "In light of the court's earlier ruling in the case prior to arguments being offered, there is no argument that I can make to this jury as no issues are now available." The jury subsequently convicted defendant of all three counts of delivery of a controlled substance.

At his sentencing hearing defendant testified that he was in a drug rehabilitation program at Sojourn House in May and June 1989. In July 1989 he had a relapse, however, and began to use cocaine again. The trial judge cited the need for deterrence as the primary factor in his sentencing decision. He stated that the sentence would have been longer were it not for defendant's lack of a prior criminal history. The trial court also imposed sentence for five counts of forgery to which defendant had pleaded guilty. The forgeries were committed while defendant was out on bond for the cocaine delivery charges. The trial court sentenced defendant to a three-year term of imprisonment for each of the forgery counts. Those sentences were to run concurrently with one another but consecutively to the sentences imposed for the cocaine deliveries.

Defendant's primary contention on appeal is that his trial attorney rendered ineffective assistance of counsel by attempting to raise an entrapment defense which was not at all supported by the evidence and by failing to raise any alternative arguments after the trial judge refused to instruct the jury on entrapment. Ordinarily, in order to establish an ineffective assistance of counsel claim, the defendant must demonstrate that his or her attorney's performance "fell below an objective standard of reasonableness" (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064) and a reasonable probability exists that the result would have been different were it not for counsel's errors. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) A reasonable probability is "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

There are, however, circumstances so likely to prejudice the defendant that prejudice from inadequate representation under these circumstances will be presumed. (466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067.) Thus, if defendant's attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic* (1984), 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047.

Our supreme court presumed prejudice to defendant in *People v. Hattery* (1985), 109 Ill. 2d 449, a case in which the defendant was accused of murder and pleaded not guilty. During his opening argument and during the course of the trial, defendant's attorney conceded his client's guilt and eligibility for the death penalty (*Hattery*, 109 Ill. 2d at 464-65). The court determined that this strategy was unacceptable in light of defendant's not-guilty plea and held that defendant's sixth amendment right to effective assistance had been violated. 109 Ill. 2d at 465.

Defendant argues that under *Hattery* this court should forego the two-part *Strickland* test and presume he was prejudiced by his attorney's actions. Our supreme court has recently emphasized, however, that the *Hattery* rule must be narrowly construed, and a defendant faces a high burden before the two-part *Strickland* test will be forsaken. (*People v. Johnson* (1989), 128 Ill. 2d 253, 270.) The court further stated that the automatic presumption of prejudice employed in *Hattery* would not apply to all cases in which counsel concedes the guilt of his or her client. *Johnson*, 128 Ill. 2d at 269-70.

■ We agree with the State that defendant has not met the high burden that must be overcome before the automatic presumption of prejudice employed in *Hattery* will be applied. This case is distinguishable from *Hattery* in several respects. First of all, defense counsel did not concede his client's guilt at any point in the trial. While counsel did state during opening argument that defendant had participated in the alleged drug transactions, he also argued that defendant was not guilty of the charges because defendant was entrapped. Defendant's attorney then presented testimony that one of the agents engaged in serious misconduct by giving cocaine to defendant and using it with him. During the instructions conference, the attorney argued vigorously that entrapment instructions should be given to the jury. It was only after the trial court refused to give these instructions that defense counsel waived closing argument and stated in front of the jury that there were no available issues because of the trial court's ruling.

In light of defense counsel's attempts to present and argue a defense that would have resulted in his client's exoneration, we cannot say that the trial lost its adversarial character to such an extent that departure from the *Strickland* rule is justified. Defendant is highly critical of his trial attorney's attempt to present a defense which had a miniscule chance, if any, of being successful, especially when defendant admitted his participation in the alleged drug transactions in order to pursue that defense. Under the circumstances of this case, however, it appears the only alternative would have been to present no defense evidence at all and merely attempt to attack the strength of the prosecution's case. This strategy would have inevitably led to defendant's conviction as he was caught red-handed arranging narcotics transactions for and delivering cocaine to undercover drug agents.

Even though an entrapment defense had very dim prospects of success, defense counsel could have reasonably concluded that attempting to pursue one was a better alternative than rolling over and playing dead. In our view, the strategy adopted by defense counsel submitted the prosecution's case to a greater degree of adversarial testing than would have been the case if the defense had presented no evidence at all in the face of a very strong prosecution case. We therefore conclude that the automatic presumption of prejudice employed in *Hattery* does not apply here. See *People v. Pickett* (1991), 217 Ill. App. 3d 426, 428-29 (no ineffective assistance where counsel admitted client guilty of alleged conduct but argued that a necessity defense might be available even though trial court later concluded evidence was insufficient to warrant instruction on that defense).

We will now apply the *Strickland* test to determine whether defense counsel provided ineffective assistance at trial. Because a defendant must meet both prongs of the *Strickland* test in order to establish ineffective assistance of counsel, such claims may be disposed of solely on the basis that defendant suffered no prejudice from counsel's alleged deficiencies. (*People v. Johnson* (1989), 128 Ill. 2d 253, 271.) Here, if defendant had presented no entrapment defense and had not testified instead of admitting that he was guilty of the alleged conduct, Agent Whipple's positive testimony that defendant twice delivered to him cocaine and arranged for a third purchase would, if unrebutted, have certainly resulted in a conviction. Therefore, defendant cannot prevail on his ineffective assistance of counsel claim.

Defendant's final contention is that the trial court's imposition of a 16-year sentence for the largest cocaine delivery was excessive and that the trial court failed to give adequate consideration to defendant's rehabilitative potential. While a trial court does not have completely unbridled discretion in imposing sentence, its sentencing decisions are entitled to great deference and weight. (*People v. Streit* (1991), 142 Ill. 2d 13, 18-19.) A sentence will be altered upon review only if the trial court has abused its discretion. (*Streit*, 142 Ill. 2d at 19.) Although a trial court is required in imposing sentence to consider the defendant's potential for rehabilitation, the court is not required to give greater weight to this factor than to the seriousness of the offense. *People v. Keyes* (1988), 175 Ill. App. 3d 1013, 1020.

The potential sentencing range for the most serious offense was a term of 6 to 30 years in prison. (See Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2); Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3).) The trial judge cited the need to deter others from committing the same offenses as the sole aggravating factor (see Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(7)). The judge stated that he would have imposed a longer sentence were it not for defendant's lack of a prior criminal history. He further stated that he had not been persuaded that defendant's criminal conduct would not recur.

■ In arguing that he had strong potential for rehabilitation, defendant cites his lack of a prior criminal record, his cocaine addiction, and his completion of a drug treatment program at Sojourn House. The trial judge expressly stated that he imposed a lesser sentence because defendant had no prior record. Although defendant did complete the drug rehabilitation program, he started using cocaine again by his own admission shortly after he finished the program. Therefore we cannot quarrel with the trial court's conclusion that

defendant's criminal behavior could very well be repeated. In light of the above, the trial court gave adequate weight to defendant's rehabilitative potential and did not abuse its discretion in imposing sentence.

For the above reasons, the judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

WOODWARD and GEIGER, JJ., concur.