No. 2--05--0625    Filed: 5-3-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--CF--1932 |
| MICHAEL D. SALLEY, | ) ) | Honorable Perry R. Thompson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CALLUM delivered the opinion of the court:

Defendant, Michael D. Salley, was charged by indictment with robbery, armed robbery, aggravated robbery, and aggravated battery. 720 ILCS 5/18--1(a), 18--2(a)(1), 18--5(a), 12--4(b)(1) (West 2002). He pleaded guilty to armed robbery, and the other charges were dismissed. Following a sentencing hearing, the trial court sentenced defendant to 11 years' imprisonment. The court found that defendant had inflicted physical harm while committing armed robbery, thereby triggering the truth-in-sentencing provisions of the Unified Code of Corrections (Code) (730 ILCS 5/3--6--3(a)(2)(iii) (West 2002)). Accordingly, the court ordered defendant to serve 85% of his 11-year term. The court subsequently denied defendant's motion to reduce the sentence. Defendant appeals, arguing that the court erred in applying the truth-in-sentencing provisions where the statute's requirement that the court find that great bodily harm was committed to "a victim" was not satisfied. He requests that we vacate the sentencing order and remand with instructions to issue a new order

specifying that defendant is entitled to earn day-for-day good-conduct credit. 730 ILCS 5/3--6--3(a)(2.1) (West 2004). We affirm.

## I. BACKGROUND

On July 27, 2004, defendant and Curtis Jones were charged by indictment with robbery, aggravated robbery, armed robbery, and aggravated battery in relation to an incident at Krispy Kreme Doughnuts in Glendale Heights on July 6, 2004. The robbery, aggravated robbery, and armed robbery counts each alleged that defendant and Jones took property "from the presence of Michelle R. Flanagan." The aggravated battery count alleged that defendant and Jones "knowingly caused bodily harm to Raymond L. Jackson" by striking him in the head with a deadly weapon--specifically, a metal bar.

In providing the factual basis for the plea, the State proffered that Jackson would testify that, on July 26, 2004, he was working at the Krispy Kreme store when defendant and Jones entered the store through the drive-thru window. He would further testify that defendant approached him and told him to put up his hands. When Jackson did not comply, defendant struck him in the head several times with a pipe, causing Jackson to fall to the ground. The State also proffered that Flanagan would testify that she was working at the store that evening. She saw Jackson get struck and fall to the ground. Defendant and Jones then came into the office and ordered Flanagan to open the safe. Defendant took money out of the safe, as well as from several cash registers.

The State proffered that Detective Sherry Baley would testify that she interviewed defendant. Defendant stated that he told Jackson to put up his hands. When he did not comply, defendant hit him four or five times with the pipe until he felt that Jackson was no longer a threat. Defendant also

admitted to Baley that he took money from the safe and the cash registers and that he and Jones divided the proceeds after they left the store.

At the sentencing hearing on January 20, 2005, Jackson testified that he was working at Krispy Kreme on July 6, 2004. He authenticated a videotape taken by a security camera during the incident and confirmed that he prepared and signed a victim impact statement. The videotape and statement were admitted into evidence. In his statement, Jackson stated that he experienced headaches following the incident and that he had suffered a broken arm and a fractured finger as a result of being struck by the metal bar.

Flanagan testified that she was working as a supervisor at Krispy Kreme on July 6, 2004. Jackson and Jones worked at the store. On the night of the incident, Jones was working at the store, but a few hours prior to the incident he left after "begging" Flanagan to let him leave early. He left at 1 or 2 a.m. Flanagan's victim impact statement was admitted into evidence. In the statement, she stated that she had trouble sleeping after the incident and was fired from her job. According to Flanagan, Jones knew the code for the store's safe.

Pamela Sorenson, general manager at Krispy Kreme, testified that she was not present at the store on the evening of the incident. According to Sorenson, prior to the incident, Jackson was a dedicated and hardworking employee. Afterwards, Jackson could not focus on his work and was afraid to work the third (i.e., night) shift. He was very jumpy. Sorenson subsequently hired a security guard for the third shift because she was unable to find anyone to work the shift.

Detective Baley testified that when she interviewed defendant, he admitted that he had entered the store through the drive-thru window and hit Jackson with the metal bar four or five times.

Defendant's demeanor was sullen, and he was not very forthcoming. He informed Baley that he had spent the stolen funds on clothes and shoes. Baley also interviewed Jones, who stated that he had planned the robbery and talked defendant into it. Jones also told Baley that defendant is his cousin. Glenda and Curtis Salley, defendant's parents, testified in mitigation.

The trial court sentenced defendant to 11 years' imprisonment with credit for 196 days served. Because defendant's crime was an armed robbery, the court found that the truth-in-sentencing provisions applied and that good-conduct credit would be calculated at 4.5 days per month. The court noted that it contemplated that calculation in determining the sentence.

Defendant moved to withdraw his plea or, alternatively, to reduce his sentence. He alleged, in part, that the court erred in applying the truth-in-sentencing provisions based on the injuries to Jackson, because Jackson was not listed as a victim in the armed robbery charge to which defendant pleaded guilty. At a hearing on defendant's motion, defendant withdrew his request to withdraw his plea. Following a hearing on defendant's motion to reduce his sentence, the court denied the motion. Defendant timely appealed.

## II. ANALYSIS

On appeal, defendant argues that the truth-in-sentencing provisions of section 3--6--3(a)(2)(iii) of the Code do not apply in this case. "Truth-in-sentencing" is a label applied to a change in the statutory method the Department of Corrections uses to calculate good-conduct credit. People ex rel. Ryan v. Roe, 201 Ill. 2d 552, 556 (2002). Under the Code, an inmate generally receives day-for-day good-conduct credit. See 730 ILCS 5/3--6--3(a)(2.1) (West 2002). However, where a defendant is convicted of armed robbery and the trial court makes a finding that the conduct leading

to the conviction resulted in great bodily harm to "a victim," the defendant shall receive no more than 4.5 days of good-conduct credit for each month of his or her sentence of imprisonment. 730 ILCS 5/3--6--3(a)(2)(iii) (West 2002). In other words, the defendant must serve at least 85% of his or her sentence and does not receive normal day-for-day good-conduct credit. Roe, 201 Ill. 2d at 556.

Preliminarily, defendant concedes that he has waived any challenge to the lack of an explicit finding of great bodily harm under section 5--4--1(c--1) of the Code (730 ILCS 5/5--4--1(c--1) (West 2002)). Defendant failed to object to the lack of finding and failed to ask the trial court to articulate a basis for such a finding. See People v. Davis, 93 Ill. 2d 155, 162-63 (1982) (where the statute is not mandatory, a right is purely personal to the defendant and thus may be waived).

Turning to the primary issue on appeal, defendant argues that the trial court erred in applying the truth-in-sentencing provisions to his sentence. He notes that he pleaded guilty to armed robbery and that the indictment named only one victim--Flanagan. Defendant concedes that Jackson was injured during the incident, but he notes that Jackson was named as a victim only in the aggravated battery charge that was dismissed.

As the issue on appeal concerns the construction of a statute, which is a question of law, our review is de novo. People v. Collins, 214 Ill. 2d 206, 214 (2005). The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. People v. Hickman, 163 Ill. 2d 250, 261 (1994). The language of a statute is the best means of determining legislative intent. Hickman, 163 Ill. 2d at 261. The statutory language should be given its plain and ordinary meaning. People v. Whitney, 188 Ill. 2d 91, 97 (1999). Where statutory language is clear and unambiguous, its plain meaning will be given effect. However, where the language is ambiguous, we may consider

other extrinsic aids for construction to resolve the ambiguity and determine legislative intent. Hickman, 163 Ill. 2d at 261. Generally, penal statutes are strictly construed in the defendant's favor. People v. Robinson, 172 Ill. 2d 452, 461 (1996).

Defendant asserts that section 3--6--3(a)(2)(iii) of the Code is ambiguous because "a victim" could reasonably be construed to refer either to anyone who is injured by the defendant's conduct or only to someone named in the charging instrument as a victim of the offense for which the defendant is being sentenced. Under defendant's reasoning, our lenity policy should apply to resolve this ambiguity in his favor. He further suggests that a narrow reading of "a victim" makes more sense because a broad reading would render the term "a victim" redundant; that is, the same meaning would follow if the statute merely required that a defendant's conduct "resulted in great bodily harm" without the qualifying phrase "to a victim." Anyone, according to defendant, who suffers "great bodily harm" could be described as "a victim" under a broad reading of the Code. Defendant further asserts that the legislature failed to specify whether the Code applies where the conduct leading to the offense resulted in great bodily harm to a victim "regardless of whether that victim is named in the charging instrument." Thus, he reasons that the statute is ambiguous because there is no way to ascertain whether "a victim" refers to anyone who suffers great bodily harm as a result of the underlying conduct or only to persons who are named as victims in the charging instrument.

We reject defendant's argument that section 3--6--3(a)(2)(iii) is ambiguous. The statute's reference to an offense that "resulted in great bodily harm to a victim," in our view, unambiguously encompasses anyone who is injured by the defendant's conduct during the offense in question. The legislature's word choice--"a victim" versus "the victim(s)"--requires such a reading. As to

defendant's argument that the legislature should have specified in the Code whether the victim should be named in the charging instrument, we decline to impose such a requirement, because defendant attempts to create ambiguity where none exists. In drafting statutes, the legislature cannot contemplate every potential factual scenario. Furthermore, its use of "a victim" rather than "the victim(s)" weighs against defendant's reading.

Defendant relies on People v. Cunningham, 365 Ill. App. 3d 991, 997 (2006). In Cunningham, the defendant, her brother, and several other individuals went to a drug dealer's house to steal money and drugs. The defendant's brother entered the house first and was shot by the drug dealer. The defendant and the rest of the would-be thieves fled the scene. At trial, the court found that the defendant's conduct caused great bodily harm to her coconspirator-brother and that she must serve 85% of her sentence.

On appeal, the defendant argued that her brother was a coconspirator and not "a victim" for purposes of the truth-in-sentencing statute. The Appellate Court, Fifth District, vacated the truth-in-sentencing portion of the trial court's sentencing order. In reaching its conclusion, the court relied on section 3--1--2(n) of the Code, which provides that the term "victim" in the Code shall be given the meaning set forth in the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/3(a) (West 2004)). 730 ILCS 5/3--1--2(n) (West 2004).

Prior to 2006, a crime victim was defined under the Act as:

"(1) a person physically injured in this State as a result of a violent crime perpetrated or attempted against that person or (2) a person who suffers injury or loss of property as a result of a violent crime perpetrated or attempted against that person or (3) a single

representative who may be the spouse, parent, child or sibling of a person killed as a result of a violent crime perpetrated against the person killed or the spouse, parent, child or sibling of any person granted rights under this Act who is physically or mentally incapable of exercising such rights, except where the spouse, parent, child or sibling is also the defendant or prisoner or (4) <u>any person against whom a violent crime has been committed</u> or (5) any person who has suffered personal injury as a result of a violation of Section 11--501 of the Illinois Vehicle Code, or of a similar provision of a local ordinance, or of Section 9--3 of the Criminal Code of 1961, as amended[.]" (Emphasis added.) 725 ILCS 120/3(a) (West 2004).

The <u>Cunningham</u> court noted that it was conceivable that the defendant's brother could fall under subsection (4), but rejected that premise in light of our policy of lenity, which provides that any ambiguity must be resolved in favor of the defendant. <u>Cunningham</u>, 365 Ill. App. 3d at 996-97. According to the court, a home occupant's defending himself when confronted with an armed invader cannot be considered a crime, and, therefore, the invader cannot be considered a victim. <u>Cunningham</u>, 365 Ill. App. 3d at 997. Accordingly, the court held that the defendant's brother was not "a victim" for sentencing purposes where he was the only person injured during the incident and the victim listed in the indictment was uninjured. <u>Cunningham</u>, 365 Ill. App. 3d at 997.

We disagree with defendant's argument that <u>Cunningham</u> stands for the proposition that the term "victim" is ambiguous. The <u>Cunningham</u> court found subsection (4) "ambiguous" only in the context of the facts of that case. It noted that the statute was ambiguous only after considering that a home occupant has a right to defend himself and that such defense is not a crime. Here, in contrast, Jackson sustained injuries through defendant's unlawful use of force. Indeed, defendant concedes

that Jackson could fall within the "literal" meaning of subsection (4) as a person "against whom a violent crime has been committed (725 ILCS 120/3(a)(4) (West 2004))." We agree. However, defendant argues that we should not read the terms "crime victim" in section 3(a)(4) of the Act and "a victim" in section 3--6--3(a)(2)(iii) of the Code so broadly. In defendant's view, a broad reading would encompass as a victim anyone against whom any violent offense has been committed at any time, even if the offense is unrelated to the offense for which the defendant is being sentenced. Defendant further asserts that this broad reading also renders the provision ambiguous.

In support of his position, defendant relies on People v. Keyes, 175 Ill. App. 3d 1013 (1988). In Keyes, the defendant's automobile collided with a vehicle containing four passengers. The driver of the struck vehicle did not sustain serious personal injury, but the other passengers were injured. The defendant was convicted of driving under the influence of alcohol and being involved in a motor vehicle accident that resulted in great bodily harm to one of the passengers. On appeal, this court addressed whether a victim impact statement was properly admitted under the Act; specifically, whether the driver of the struck vehicle was a victim under section 3(a) of the Act. We held that subsections (1) and (5) did not apply because the driver did not suffer any personal injury in the accident. Keyes, 175 Ill. App. 3d at 1017. We also held that subsections (2) and (4) applied only if the violent crime in question was perpetrated against the driver. Keyes, 175 Ill. App. 3d at 1017. We explained that the offense at issue--DUI--could be perpetrated against only individuals who suffered great bodily harm in the accident, and, because the driver did not suffer such harm, subsections (2) and (4) did not apply and the driver could not be considered a victim under the Act. Keyes, 175 Ill. App. 3d at 1017.

We find <u>Keyes</u> distinguishable. As defendant concedes, the offense in that case could be committed against only individuals who suffer great bodily harm. Here, the armed robbery charge to which defendant pleaded guilty alleged that defendant, while armed with a dangerous weapon, took property from Flanagan's presence by threatening imminent use of force. Armed robbery does not require that the person against whom it is committed necessarily suffer great bodily harm. 720 ILCS 5/18--2(a)(1) (West 2002).

We also reject defendant's argument that a "broad" reading of the Code or the Act would encompass as a victim anyone against whom any violent offense has been committed at any time, even if the offense is unrelated to the offense for which the defendant is being sentenced. Defendant's hypothetical is illogical, as there is no indication in either statute that it would encompass offenses committed "at any time" or unrelated to the offense for which the defendant is being sentenced.

In summary, the fact that Flanagan did not suffer great bodily harm does not preclude a finding that defendant caused great bodily harm to "a victim" under the Code.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and BYRNE, JJ., concur.