# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Lopez-Bonilla*, 2011 IL App (2d) 100688

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTIAN LOPEZ-BONILLA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0688 |
| Filed | December 14, 2011 |
| Rehearing denied | January 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly determined that the truth-in-sentencing provisions of the Unified Code of Corrections applied to defendant's sentence for home invasion and that he was required to serve no less than 85% of his sentence, notwithstanding defendant's contention that the trial court misconstrued the statutory term "great bodily harm," since the trial court reasonably found the victim suffered great bodily harm based on the description of the attack, the descriptions of his injuries, and the amount of blood caused by the injuries. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 08-CF-2469; the Hon. Allen M. Anderson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Mark G. Levine, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Barry W. Jacobs, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Presiding Justice Jorgensen and Justice Bowman concurred in the judgment and opinion.

## OPINION

¶ 1     Defendant, Christian Lopez-Bonilla, appeals the trial court's order applying truth-in-sentencing provisions to his sentence for home invasion (720 ILCS 5/12-11(a)(2) (West 2008)), resulting in a denial of day-for-day good-conduct credit. He contends that the trial court misconstrued the statutory term "great bodily harm" under section 3-6-3(a)(2)(iii) of the Unified Code of Corrections (Code) (730 ILCS 5/3-6-3(a)(2)(iii) (West 2008)) when it determined that truth-in-sentencing provisions applied such that he was required to serve no less than 85% of his sentence. We affirm.

¶ 2                                I. BACKGROUND

¶ 3     On November 5, 2008, defendant was charged with multiple counts, including home invasion. On February 22, 2010, a jury trial was held.

¶ 4     Evidence at trial showed that, in August 2008, at about 11:30 p.m., several people wearing masks broke into the home of Steven Layne after he and his family had gone to bed. After hearing noises and being unable to get a dial tone on the phone, Layne retrieved a baseball bat from a closet and went to investigate. He swung the bat at one of the intruders and then was jumped by at least two people.

¶ 5     Layne testified that the men started kicking and hitting him. Layne said that he saw a gun and that one of the men hit him over the head with it. He said that he started bleeding and could feel the blood coming out. Layne stated that someone then grabbed his hair and started throwing his head back and forth into the drawer of a desk. Layne did not know how many times his head hit the desk but he said that it was enough to take huge chunks of wood out of the drawer. The intruders then threw Layne down, placing him facedown in blood. They bound Layne's hands and legs with tape and put tape over his mouth and eyes. Layne felt like he was losing consciousness and then heard yelling and the sounds of people running out of

the house. Layne reached into the desk drawer for scissors and cut himself free.

¶ 6    After freeing himself, Layne saw that his mother and children were in the room with him, also bound with tape. Layne freed his mother and gave her the scissors to free the children. Layne then went to look for his wife and discovered that she had broken a window screen and fled. As Layne was getting his family into a van to flee, the police arrived.

¶ 7    Layne was placed in an ambulance and cleaned up. The ambulance crew wanted to take him to the hospital for stitches, but he refused hospital treatment, stating that he did not want to leave his children. Layne described the cut on his head as "sizeable" and said that there was "a lot" of blood on the floor in the house from it. He also had a neck injury. Layne said that he felt pain that lingered for some time afterward, although he did not state specifically how long the pain lasted. Photographs of Layne's injuries taken after he was cleaned up were described by a witness as depicting various lacerations to the top of Layne's head and to the left eye, lacerations on the left arm, lacerations in the area above the left eye, and a laceration behind the jaw bone.[1] Layne's mother testified that, during the incident, she saw Layne with blood coming from his face.

¶ 8    Defendant was later questioned about the incident. Defendant admitted that he was one of six people who broke into the house. He denied that he took part in Layne's beating. Daniel Feliciano, another of the six men, testified against defendant under a plea agreement. He described how members of the group planned the crime and cut the phone line. Feliciano indicated that defendant was in the room with Layne during the beating while others in the group were in other parts of the house.

¶ 9    Defendant was found guilty and sentenced to 23 years' incarceration. The court found that the conduct leading to the conviction resulted in great bodily harm to Layne. As a result, the court found that truth-in-sentencing provisions applied such that defendant would be required to serve no less than 85% of his sentence. Defendant moved to reconsider, arguing that Layne did not suffer great bodily harm and that the sentence was disproportionate to the sentences imposed on his codefendants. The court reduced the sentence to a 20-year term but denied the motion to reconsider the application of the truth-in-sentencing provisions. Defendant appeals.

¶ 10                                    II. ANALYSIS

¶ 11    Defendant argues that the court denied him of his right to earn day-for-day good-conduct credit because Layne did not suffer great bodily harm under section 3-6-3(a)(2)(iii). " 'Truth-in-sentencing' is a label applied to a change in the statutory method the Department of Corrections uses to calculate good-conduct credit." *People v. Salley*, 373 Ill. App. 3d 106, 109 (2007). Generally, prisoners are entitled to day-for-day good-conduct credit against their sentences. 730 ILCS 5/3-6-3(a)(2.1) (West 2006). Currently, under truth-in-sentencing provisions, a person convicted of home invasion would be excepted from the day-for-day

---

[1]Those photographs do not appear in the record. Instead, the DVD on which they purportedly appear depicts surveillance video from a retail store. However, the photographs are not necessary in order to determine this appeal.

credit provision and would receive no more than 4.5 days of credit for each month of his or her sentence, if the court finds that the conduct leading to the conviction resulted in great bodily harm to the victim. 730 ILCS 5/3-6-3(a)(2)(iii) (West 2006). "In other words, the defendant must serve at least 85% of his or her sentence and does not receive normal day-for-day good-conduct credit." *Salley*, 373 Ill. App. 3d at 109.

¶ 12    The meaning of the term "great bodily harm" in connection with the truth-in-sentencing provisions has not specifically been addressed in the Illinois case law. However, the meaning of the term has been discussed on multiple occasions in relation to aggravated battery (720 ILCS 5/12-4(a) (West 2006)). We find those same principles equally applicable here.

¶ 13    "Although the term great bodily harm is not susceptible of a precise legal definition, it requires an injury of a greater and more serious character than an ordinary battery." (Emphasis omitted.) *People v. Mimes*, 2011 IL App (1st) 082747, ¶ 29 (citing *People v. Figures*, 216 Ill. App. 3d 398, 401 (1991)). "Bodily harm as it relates to ordinary battery requires 'some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent.' " *Id.* (quoting *People v. Mays*, 91 Ill. 2d 251, 256 (1982)). Great bodily harm does not require hospitalization of the victim, or permanent disability or disfigurement, but instead centers on the injuries that the victim received. *Id.* What the victim did to treat the injuries is irrelevant. See *People v. Milligan*, 327 Ill. App. 3d 264, 267 (2002).

¶ 14    Although defendant addresses the issue as one of statutory interpretation and asks this court to find a lack of great bodily harm as a matter of law, whether a victim's injuries rise to the level of great bodily harm is a question of fact. *Figures*, 216 Ill. App. 3d at 401. Thus, as long as the evidence was sufficient to support a finding of great bodily harm, the trial court's determination will be affirmed. Further, the burden of proof at sentencing is lower. "The State is not subject to the same burden of proof at a sentencing hearing as it is during the guilt phase of a trial." *People v. Bailey*, 409 Ill. App. 3d 574, 592 (2011). "Indeed, our supreme court has not articulated a specific burden of proof at sentencing and instead maintains that 'relevance and reliability are the important factors in the consideration of evidence at sentencing.' " *Id.* (quoting *People v. Jackson*, 149 Ill. 2d 540, 549 (1992)).

¶ 15    In *People v. Matthews*, 126 Ill. App. 3d 710, 714-15 (1984), perhaps the closest case on point, the victim was struck on the head with a gun and struck on the arms and head with a baseball bat with three full blows. The victim stated that she had only a bruise on her head and did not require medical attention. In upholding the finding that there was great bodily harm, the First District noted that the matter was a question fact and that the victim's statements about the extent of her injuries did not preclude a finding that great bodily harm occurred. *Id.* at 715.

¶ 16    Likewise, sufficient evidence of great bodily harm was found when the victim was hit twice, resulting in a lump on the mouth, a scar on the face, and bruises under the chin. *People v. Smith*, 6 Ill. App. 3d 259, 264 (1972). Photographs depicting bruises, scratches, and cuts have also been sufficient. *Milligan*, 327 Ill. App. 3d at 267.

¶ 17    In comparison, findings of great bodily harm were reversed when there were substantial questions regarding the extent of the victim's injury. For example, in *People v. Watkins*, 243

Ill. App. 3d 271, 278 (1993), the record lacked information about the victim's injury. All that was known was that a bullet grazed the victim's side. The victim did not state that he bled. Without more information about the injury, the First District held that there was insufficient evidence of great bodily harm. See also *In re J.A.*, 336 Ill. App. 3d 814, 818-19 (2003) (the victim had a single stab wound of indeterminate size, described the injury as feeling like someone pinched him, and was advised to have an indeterminate number of stitches by an unnamed person); *Figures*, 216 Ill. App. 3d at 402 (bullet penetrated a shoe but did not penetrate the skin).

¶ 18    Unlike in cases where findings of great bodily harm have been reversed, here there was specific evidence about the nature and extent of Layne's injuries. There was evidence that Layne was stuck multiple times, including being hit on the head with a gun and having his head repeatedly slammed into a desk drawer with enough force to splinter the drawer. He bled enough to feel the blood coming out and to be placed facedown in his own blood. He also felt like he was losing consciousness.

¶ 19    Defendant contends that the photographs show the nature of the injuries and that, as a matter of law, they are insufficient to rise to the level of great bodily harm. He also notes that Layne did not specifically describe his level of pain or how long it lasted. But the photographs, which do not appear in the record, were taken after the fact and in any event were described by a witness as showing multiple injuries. Further, the descriptions of the photographs and Layne's statements about his level of pain are not the only evidence of his injuries. Based on the description of the attack, the descriptions of Layne's injuries, and the amount of blood caused by those injuries, it was reasonable for the court to conclude that the cumulative evidence showed that great bodily harm occurred. See *People v. Psichalinos*, 229 Ill. App. 3d 1058, 1068-69 (1992) (cumulative evidence of the nature of the attack, which caused bleeding and a bruise, was sufficient).

¶ 20                                    III. CONCLUSION

¶ 21    The trial court reasonably found that Layne suffered great bodily harm. Accordingly, the judgment of the circuit court of Kane County is affirmed.

¶ 22    Affirmed.