NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190288-U

NO. 4-19-0288

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 19, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| CAPRIJAWN T. WINSTON, | ) | No. 17CF1206 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Adam M. Dill, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's admission of hearsay statements included in police body camera footage was harmless error. Defendant forfeited review of her claim that the State failed to present evidence to support the felony enhancement of her driving while license revoked offense.

¶ 2    In September 2018, following a jury trial, defendant, Caprijawn T. Winston, was found guilty of driving while her license was revoked (DWLR) (625 ILCS 5/6-303(a) (West 2016)). The trial court sentenced her to 23 months in prison. Defendant appeals, arguing the court erred by allowing the State to introduce into evidence audio from police body camera footage of her traffic stop and by sentencing her to a Class 4 felony where the State failed to present evidence required under section 6-303(d-3) of the Illinois Vehicle Code (*id.* § 6-303(d-3)) to elevate her sentence from a Class A misdemeanor. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            On August 31, 2017, the State charged defendant with DWLR (625 ILCS 5/6-303(a) (West 2016)), alleging defendant "drove a motor vehicle on a public highway in Champaign County, Illinois" while her license to drive was revoked as a result of a conviction for driving under the influence (DUI) (*id.* § 11-501) and when she had previously been convicted of DWLR (*id.* § 6-303) at least three times.

¶ 5            Defendant filed multiple pretrial motions, including a motion to suppress statements made by defendant that were recorded by the body camera of Deputy Cory Christensen, the police officer who arrested her. In her motion, defendant alleged her recorded statements were obtained "without prior reading of a *Miranda* warning." The trial court subsequently conducted a hearing on defendant's motion. At the beginning of the hearing, the State agreed certain statements made by defendant at the end of the body camera footage were inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966), but contended the rest of the footage was admissible. The State then called Deputy Christensen to testify. According to Deputy Christensen, while on patrol at approximately 4 a.m. on August 21, 2017, he observed a silver Chevrolet Impala without a "rear registration lamp." Deputy Christensen testified he then attempted to initiate a traffic stop. Deputy Christensen followed the Impala for some distance before it finally pulled over. Once the Impala stopped, Deputy Christensen pulled up behind it and exited his vehicle. Deputy Christensen testified, before he approached the Impala, he ordered the driver to shut off the vehicle. Deputy Christensen "heard a female who *** [he] observed in the driver's seat say[,] 'I cannot hear you.' " Deputy Christensen approached the Impala, which then "accelerated at a high rate of speed from the traffic stop." The State played an approximately two-minute video segment from Deputy

Christensen's body camera footage, which depicted Deputy Christensen initiating the traffic stop and the Impala driving away. In the last few seconds of the video, Deputy Christensen can be heard saying, after the Impala drove away: "She took off on me. It's gonna be a black, female driver accelerating eastbound on Leverett." After the presentation of evidence, defendant withdrew her motion to suppress statements with respect to the two-minute portion of the video which had been viewed by the court. The court ultimately granted defendant's motion, ordering that, while the two-minute portion of the video viewed by the court could be played to the jury with audio, the rest of the video could only be shown without audio.

¶ 6　　　　　Subsequently, defendant filed a motion *in limine* seeking to exclude all audio from Deputy Christensen's body camera footage, including from the two-minute segment which the trial court previously allowed. Defendant alleged that, during the video, "the officer narrate[d] the events as they occur[red]" and that "such statements are hearsay in that they are out of court statements to [*sic*] the truth of the matter asserted." Prior to defendant's trial, the trial court took up defendant's motion *in limine*. The assistant state's attorney informed the court he intended to present Deputy Christensen's body camera footage to the jury but that the only portion of the video he would play with audio would be the two-minute portion which had previously been allowed. The court then asked defense counsel whether he "ha[d] anything else to add regarding the motion *in limine*," to which defense counsel responded, "No, Your Honor. We'd stand on our motion. I would just add that, essentially, any audio played would, in fact, be hearsay." The assistant state's attorney responded, saying he "d[idn't] see how it [was] hearsay in this case." The court then watched the two-minute portion of the video again and ultimately denied defendant's motion with respect to that portion of the video but granted the motion with respect to the rest of the video.

¶ 7       Defendant's case proceeded to a jury trial. The State first called Deputy Christensen, who testified consistently with his testimony during the hearing on defendant's motion to suppress, although in more detail. For example, Deputy Christensen testified he "had no doubt" the voice he heard coming from the driver's side of the Impala saying, "I can't hear you." was female. He also testified as follows regarding his actions after the Impala drove away:

> "At that point, I turned around while I got on my radio, let Metcad, who is our dispatch, know that the vehicle had taken off eastbound, that there was a female driving it, from me seeing a silhouette of what I believed to be a female in the driver's seat as well as a female's voice coming from the driver's door."

Deputy Christensen later testified he pursued the Impala, and, approximately 20 seconds later, found it crashed in a nearby beanfield. Once Deputy Christensen found the crashed Impala, he observed a "black female," who he identified in court as defendant, "lying by the driver's door outside of the vehicle" and a "black male with his right leg entrapped or pinned in the front passenger door as he was seated in the front passenger seat." After more officers arrived, one officer "ran [defendant's] information through [the police] dispatch center" and Officer Christensen ran her information "through LEADS" and discovered defendant's driver's license was revoked. The State then published for the jury Deputy Christensen's body camera footage, only playing audio during the two-minute period authorized by the trial court.

¶ 8       On cross-examination, Deputy Christensen acknowledged he did not know whether the Impala's passenger side window was open and further acknowledged, if it were not, "someone in the passenger's [side could] say[ ] something, and [he would] hear that from the driver's side." He also acknowledged, based on the amount of damage to the Impala and the distance between

the roadway and the location in the beanfield where it stopped, it was "possible that [the] vehicle flipped, rolled over on its way into the ditch." Deputy Christensen agreed that, "when [a] vehicle rolls over, the people inside, if they don't have seatbelts on, get kind of jumbled up." Deputy Christensen also testified, during the initial traffic stop, he "saw a silhouette of what [he] believed to be a female in the driver's seat, a male in the passenger seat, and heard a female voice coming from the interior of the vehicle near the driver's side."

¶ 9        After Deputy Christensen testified, the State published a one-page driving abstract from the Illinois Secretary of State. The abstract stated defendant's license had been issued on June 26, 2004, and had expired on September 28, 2008. The abstract also stated "revocation was in effect on 08-21-2017."

¶ 10        Defendant testified on her own behalf. According to defendant, on August 21, 2017, her boyfriend, Anthony Miles, was driving her to a gas station in a relative's silver Impala. While Miles drove, defendant was in the passenger's seat. Defendant testified that, after the police officer initially pulled them over, Miles decided to drive away even though she asked him not to. After driving some distance, the car left the road, "flipped so many times" and, when it finally stopped, defendant was "[i]n the middle" of the car. Defendant then "crawled over" to the driver's side of the car to exit the vehicle while Miles tried to exit the vehicle from the passenger window because the passenger door would not open.

¶ 11        The jury ultimately found defendant guilty of DWLR. The trial court subsequently scheduled a sentencing hearing and ordered that a presentence report be prepared.

¶ 12        Prior to the sentencing hearing, defendant filed a motion for acquittal or, in the alternative, for a new trial. In her motion, defendant alleged, in relevant part, that the trial court

erred in denying her motion *in limine* to exclude the audio from Deputy Christensen's body camera footage.

¶ 13        Subsequently, defendant's presentence report was completed. The report reflected defendant had a DUI conviction in 2008, as well as three DWLR convictions, one of which was in 2010 and two of which were in 2011. The report further indicated, at the time the report was prepared, defendant's driver's license was revoked.

¶ 14        On January 8, 2019, the trial court conducted defendant's sentencing. At the beginning of the hearing, the court denied defendant's posttrial motion, finding no error occurred. During the sentencing portion of the hearing, the State presented no evidence. Defendant presented several letters in mitigation and made a statement in allocution. After argument, the court sentenced defendant to two years in prison.

¶ 15        In February 2019, defendant filed a motion to reconsider, which the trial court granted, reducing her sentence to 23 months in prison.

¶ 16        This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18        On appeal, defendant argues the trial court erred by allowing the State to introduce into evidence audio from Deputy Christensen's body camera footage of her traffic stop and by sentencing her to a Class 4 felony where the State failed to present evidence required under section 6-303(d-3) of the Illinois Vehicle Code to elevate her sentence from a Class A misdemeanor.

¶ 19        A. Admitting Audio From Deputy Christensen's Body Camera Footage

¶ 20        Defendant first argues the trial court erred by allowing the State to introduce into evidence audio from Deputy Christensen's body camera footage. Specifically, defendant argues

the portion of Deputy Christensen's body camera video in which he states, "[s]he took off on me" and "[i]t's gonna be a black, female driver" is inadmissible hearsay. On appeal, we review the trial court's evidentiary rulings for an abuse of discretion. See *People v. Caffey*, 205 Ill. 2d 52, 89, 792 N.E.2d 1163, 1188 (2001).

¶ 21 "Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." (Internal quotation marks omitted.) Ill. R. Evid. 801 (eff. Oct. 15, 2015). Generally, hearsay evidence is not admissible unless an exception applies. Ill. R. Evid. 802 (eff. Jan. 1, 2011); Ill. R. Evid. 803 (eff. Sept. 28, 2018). Here, the recorded statements were not made by Deputy Christensen while he was testifying. The State introduced the statements to prove that defendant was driving the Impala, *i.e.* to establish the truth of the matter asserted. In its closing argument, the State argued Deputy Christensen's recorded statements proved the driver of the Impala was a female and bolstered his other testimony identifying the driver because, as an officer, he was trained to "relay information accurately and quickly."

¶ 22 The State does not dispute that Deputy Christensen's statements are hearsay but contends the evidence was nonetheless admissible as an excited utterance, an exception to the rule against hearsay. See Ill. R. Evid. 803(2) (eff. Sept. 28, 2018). Defendant disputes the State's contention that the recorded statements qualified as excited utterances. We find it unnecessary to decide whether Deputy Christensen's recorded statements constituted excited utterances, and thus qualified as an exception to the hearsay rule, because even assuming *arguendo* the admission of the statements was error, any error was harmless.

¶ 23 "[W]hen the trial court has erroneously admitted a hearsay statement, a reversal is

mandatory unless it is clearly shown that the error was not prejudicial." *People v. Hayden*, 2018 IL App (4th) 160035, ¶ 134, 127 N.E.3d 823. "The improper admission of evidence is harmless where there is no reasonable probability that, if the evidence had been excluded, the outcome would have been different." (Internal quotation marks omitted.) *People v. Brothers*, 2015 IL App (4th) 130644, ¶ 97, 39 N.E.3d 1101 (abrogated on other grounds by *People v. Veach*, 2017 IL 120649, 89 N.E.3d 366). When deciding whether error in the admission of evidence is harmless, a reviewing court may: "(1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." (Internal quotation marks omitted.) *Id.* ¶ 98.

¶ 24        Here, before the State published the video containing Deputy Christensen's recorded statements, the deputy testified that, as he approached the Impala, he observed a female's silhouette in the driver's seat and heard a female's voice coming from the driver's side of the vehicle. Deputy Christensen also testified that, after the Impala sped away from him, he notified police dispatch that "the vehicle had taken off eastbound, *that there was a female driving it*." (Emphasis added.) Notably, defendant did not object to this portion of Deputy Christensen's testimony. Later, Deputy Christensen again stated he "saw a silhouette of what [he] believed to be a female in the driver's seat, a male in the passenger seat." Thus, independent of the audio portion of Deputy Christensen's body camera footage, the jury heard testimony establishing defendant was driving the Impala. Accordingly, Deputy Christensen's recorded statements that "[s]he took off on me" and "[i]t's gonna be a black, female driver," which defendant contends were improperly

- 8 -

admitted, were merely cumulative and duplicative of the deputy's live testimony and there is no reasonable probability that their admission affected the outcome of defendant's trial. See *People v. Abram*, 2016 IL App (1st) 132785, ¶ 76, 50 N.E.3d 1197 (finding defendant suffered "no undue prejudice" from the admission of hearsay statements recorded by a police body camera where "no information was provided in the recording that was not also established through the live testimony of [the police officers]").

¶ 25                              B. DWLR Conviction

¶ 26         Defendant also argues her Class 4 felony DWLR conviction should be reduced to a Class A misdemeanor because the State failed to present evidence that her license had been revoked for a DUI and that her three other DWLR convictions occurred while her license was revoked for a DUI-related offense. Defendant acknowledges she forfeited review of this claim by failing to raise it at the time of sentencing and in a post-sentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544, 931 N.E.2d 1184, 1187 (2010). However, she requests that we nonetheless review the claim under the plain error doctrine.

¶ 27         "The plain-error doctrine permits a court of review to consider error that has been forfeited when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Adams*, 2012 IL 111168, ¶ 21, 962 N.E.2d 410. "The first step of plain-error review is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010).

¶ 28         Section 6-303(a) of the Illinois Vehicle Code provides that "any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such

person's driver's license, permit[,] or privilege to do so *** is revoked or suspended *** shall be guilty of a Class A misdemeanor." 625 ILCS 5/6-303(a) (West 2018). However, section 6-303(d-3) provides that a fourth conviction for DWLR is a Class 4 felony if that DWLR offense and the defendant's three prior DWLR offenses occurred while the defendant's driver's license was suspended or revoked for a DUI offense under section 11-501 of the Vehicle Code (*id.* § 11-501). *Id.* § 6-303(d-3).

¶ 29     When the State charges a defendant with a DWLR offense that carries an enhanced sentence, as the State did here, it is not required to establish during trial, as an element of the offense, that the defendant's original revocation was predicated on a DUI conviction or that the defendant had previously been convicted of DWLR offenses. *People v. Lucas*, 231 Ill. 2d 169, 181, 897 N.E.2d 778, 785 (2008); *People v. Owens*, 2016 IL App (4th) 140090, ¶ 33, 59 N.E.3d 187. Instead, the State must only present proof of such facts at sentencing. *Lucas*, 231 Ill. 2d at 181; *Owens*, 2016 IL App (4th) 140090, ¶ 39.

¶ 30     The State is held to a different burden of proof at a sentencing hearing than it is at a trial. *People v. Lopez-Bonilla*, 2011 IL App (2d) 100688, ¶ 14, 962 N.E.2d 1100. "Indeed, our supreme court has not articulated a specific burden of proof at sentencing and instead maintains that relevance and reliability are the important factors in the consideration of evidence at sentencing." (Internal quotation marks omitted.) *Id.* Additionally, we have previously recognized the trial court may infer the elements necessary to sentence a defendant under section 6-303(d-3) of the Illinois Vehicle Code exist so long as the inference is supported by sufficient evidence. See, *e.g.*, *Owens*, 2016 IL App (4th) 140090, ¶ 43. For example, in *Owens*, the defendant claimed the State failed to establish his license was revoked for a DUI offense. *Id.* ¶ 41. We upheld the trial

court's decision to sentence the defendant under section 6-303(d-3) because the defendant's presentence investigation report listed his prior DUI convictions, the report did not show his license was reinstated at any point after his DUI conviction, and the defendant did not dispute his license was revoked at the time of the underlying DWLR offense. *Id.*

¶ 31        In the present case, as in *Owens*, the trial court could have reasonably inferred that defendant's driver's license was revoked as a result of a DUI offense. Defendant's presentence report indicated she was convicted of a DUI offense in 2008. As the State points out, defendant's driver's license was necessarily revoked after this conviction because, under section 501.01(d) of the Illinois Vehicle Code, the Secretary of State is required to revoke a driver's license after a DUI conviction. See 625 ILCS 5/11-501(g) (West 2006) ("The Secretary of State shall revoke the driving privileges of any person convicted under [the DUI statute] or a similar provision of a local ordinance.").

¶ 32        Sufficient evidence was also admitted from which the trial court could reasonably infer the 2008 revocation of defendant's driver's license remained in effect at the time of her three other DWLR offenses. Defendant's presentence report indicates that, following defendant's first conviction for DWLR in 2010, a notice was sent to the Secretary of State's Office stating defendant failed to pay certain fines imposed as a result of that conviction. As noted by the State, after the clerk sent the failure to pay notice, the Secretary of State could not reinstate defendant's license until her fines were fully paid. See 625 ILCS 5/6-306.6(a) (West 2010) ("Whenever any resident of this State fails to pay any traffic fine, penalty, or cost imposed for a violation of [the Illinois Vehicle Code] *** the clerk may notify the Secretary of State *** and the Secretary shall prohibit the renewal, reissue or reinstatement of such resident's driving privileges until such fine, penalty,

or cost has been paid in full."). Therefore, defendant's license could not have been reinstated until March 2016, when, according to the presentence report, defendant finished paying her fines from the 2010 DWLR conviction, and by which time she had twice more been convicted of a DWLR offense. Finally, we note the driving abstract the State presented at defendant's trial reflects defendant's driver's license expired on September 28, 2008, indicating her license was never reinstated after her 2008 DUI conviction.

¶ 33    In light of the foregoing evidence and the reasonable inferences to be drawn therefrom, we cannot say the trial court erred in sentencing defendant in accordance with section 6-303(d-3) of the Illinois Vehicle Code. Because the trial court did not err in imposing defendant's sentence, forfeiture of her claim is not excused under the plain error doctrine.

¶ 34                              III. CONCLUSION

¶ 35    For the reasons stated, we affirm the trial court's judgment.

¶ 36    Affirmed.