NOTICE
Decision filed 05/11/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241290-U

NO. 5-24-1290

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Perry County. |
| | ) | |
| v. | ) | No. 23-CF-138 |
| | ) | |
| TYLER E. EGGEMEYER, | ) | Honorable |
| | ) | James W. Campanella, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the evidence was sufficient to prove great bodily harm beyond a reasonable doubt, counsel was not ineffective for failing to request a lesser-included instruction, and the trial court's random comment before a witness testified did not constitute plain error, the defendant's convictions for aggravated battery and criminal trespass are affirmed.

¶ 2                                    I. BACKGROUND

¶ 3    On December 27, 2023, the defendant, Tyler A. Eggemeyer, was charged by indictment with aggravated battery resulting in great bodily harm (720 ILCS 5/12-3.05(a)(1)) (West 2022), criminal trespass to a residence (*id*. § 19-4(a)(2)), and aggravated battery to a pregnant person (*id*. § 12-3.05(d)(2)). On, January 9, 2024, a superseding indictment was filed. A jury trial commenced on March 12, 2024.

1

¶ 4        Shelbi Green (Shelbi), the defendant's former paramour, was called to testify. As Shelbi began her testimony by spelling her name, the trial court said, "Shelbi, you are mad at your boyfriend so speak up. Let's just say that. Okay. Thank you." The evidence at trial established that, at approximately 5:45 a.m. on December 23, 2023, several individuals were present at the residence of Steve (Steve) and Jean (Jean) Allison in DuQuoin, Illinois, including Shelbi, her and the defendant's three children, Deseriae Ford (Deseriae), and other household members. Shelbi and the defendant share custody of their three children, and Shelbi had asked him to pick them up early that morning so she and Desirae could leave for work.

¶ 5        Shelbi called the defendant when he failed to arrive to pick up the children, and Deseriae woke Steve to ask for a ride to work. As Steve was getting dressed, he heard his name being called and went toward the back door, where he observed the defendant inside the residence. Shelbi testified that she did not feel "like [her] kids were safe to go with him" based on the defendant slurring his words, not walking straight, and smelling like alcohol. Steve had not previously met the defendant and had not given him permission to enter the home. Steve instructed the defendant to leave. The defendant did not comply at first but left after being told a second time.

¶ 6        After the defendant left, the occupants returned to the living room. Shortly thereafter, the defendant began repeatedly sounding his vehicle horn from outside the residence, first from the rear and then from the front driveway. Steve and Jean went outside to calm the situation. The defendant, still in his vehicle, became increasingly agitated, stating he would not leave without his children. When Jean said she would call the police, the defendant exited his vehicle. Steve stepped between the defendant and Jean, believing the defendant was advancing toward her. A physical confrontration ensued, during which Steve and the defendant wrestled and fell to the ground. Steve's glasses were knocked off.

¶ 7    Steve testified that the defendant struck and kicked him in the head and face. He stated that the defendant "gouged [his] left eye with his finger" and that he "felt [the defendant's] finger in [his] eye, and he was twisting it." Testimony indicated that Steve's face was covered in blood and that he required immediate medical attention. Additional testimony from other witnesses, including Deseriae and Jean, corroborated the escalating nature of the defendant's behavior and the physical confrontation.

¶ 8    Dr. Ameha Hagos, an emergency physician at Pinckneyville Community Hospital, examined Steve and observed a swollen left eye requiring manual manipulation to open, as well as double and blurred vision. Dr. Hagoes testified that Steve had a periorbital hematoma, where "blood acccumulat[es]" in the area of the "eyebrow, eyelid, and under [the] eye." When asked if a black eye is a periorbital hematoma, Dr. Hagos stated that "[i]t can be included in there but I wouldn't call [a black eye] periorbital hematoma." Dr. Hagos ordered diagnostic tests and then transferred Steve to another facility for further treatment. When asked what is used to judge whether a person should be transferred to another facility, Dr. Hagos stated,

> "Yeah. So as ER physician, I have at the end of the day, I have three decisions to make for every patient that I see. One, the patient is good enough to go home with the necessary treatments; two, if they cannot go home, then I would be able to keep them in the hospital if the hospital is capable of providing the treatment; third, patient that has to be treated, I have to find the right facility where I transfer the people."

Dr. Hagos decided Steve needed to be treated at a trauma center at St. Louis University Hospital. Steve was transported by ambulance. Dr. Hagos noted a history of left eye retinol detachment in Steve's medical records but testified that no fractures or broken bones were found. Steve testified that at the time of trial, he still could not see clearly out of his left eye, had a knot on his eyelid,

and the watertight seal on his eye was gone. Photos were admitted into evidence depicting Steve's injuries, including a swollen, bloodied eye.

¶ 9 At the close of the evidence, the jury was instructed on the charged offenses. No instruction on the lesser-included offense of simple battery was tendered. During deliberations, the jury submitted a note asking the following question: "Can there be a lesser charge than great bodily harm?" Before addressing the note, the trial court stated, "[t]he parties stipulated prior to the commencement of any evidence that we would not be submitting a lesser included offense verdict." Defense counsel did not object to this statement. After discussing the note with the State and defense counsel, the trial court gave the following response to the jury's question: "You have all the evidence and the instructions. There is no additional instruction."

¶ 10 The jury found the defendant guilty of aggravated battery resulting in great bodily harm and criminal trespass to a residence and not guilty of aggravated battery to a pregnant person. For aggravated battery resulting in great bodily harm, the defendant was sentenced to four years and nine months in the Illinois Department of Corrections (IDOC), followed by a six-month period of mandatory supervised release (MSR). For criminal trespass to a residence, he was sentenced to a consecutive term of two years and nine months in IDOC, followed by a six-month period of MSR. After the defendant's post-trial motion was denied, he filed a timely appeal.

¶ 11                                    II. ANALYSIS

¶ 12 The defendant argues, "[t]he evidence of Steve's injuries presented at trial did not rise to the level of great bodily harm. Rather, Steve's injuries only demonstrated bodily harm." Defendant further argues, "Steve's injuries were likely the result of his underlying retinal detachment, and therefore did not rise to the level of great bodily harm."

4

¶ 13    When reviewing a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). It is the trier of fact's responsibility to assess credibility, resolve conflicts in testimony, and draw reasonable inferences from the evidence. *People v. Brown*, 2013 IL 114196, ¶ 48. A reviewing court will not substitute its judgment for that of the trier of fact on such matters. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009).

¶ 14    To sustain a conviction for aggravated battery under section 12-3.05(a)(1) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(a)(1) (West 2022)), the State must prove beyond a reasonable doubt that, in committing a battery, the defendant intentionally or knowingly caused great bodily harm or permanent disability or disfigurement. See *id*. Although "great bodily harm" is not susceptible to a precise legal definition, it requires an injury greater and more serious than a simple battery. *People v. Lopez-Bonilla*, 2011 IL App (2d) 100688, ¶ 13; see *People v. Mimes*, 2011 IL App (1st) 082747, ¶ 29. Whether an injury rises to the level of great bodily harm is a question of fact for the jury. *People v. Figures*, 216 Ill. App. 3d 398, 401 (1991).

¶ 15    Here, the jury heard evidence that the defendant struck, kicked, and gouged the victim's eye during a physical altercation that he initiated. Steve testified that he still had issues with his eye and that he "still can't see clear out of it and [ ] has a knot on [his] eyelid and the watertight seal [is] gone." Dr. Habos testified that Steve had a swollen left eye requiring manual manipulation to open, as well as double and blurred vision. Dr. Hagos ordered that the victim be transferred to a trauma center at St. Louis University Hospital for further treatment. While Dr. Hagoes noted a history of left eye retinol detachment, there was no testimony that the prior retional detachment

5

was the cause of the victim's ongoing eye issues. The defendant's argument that the victim's injuries were attributable to a preexisting retinal condition was presented to the jury. See *People v. Reed*, 2020 IL 124940, ¶ 51 (trier of fact is not required to accept the defendant's version of events and may reject inferences inconsistent with the evidence). Moreover, even where evidence is conflicting, a conviction will be upheld so long as the evidence is not so improbable or unsatisfactory as to create a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). We find that the evidence was not so improbable or unsatisfactory as to create a reasonable doubt that the defendant caused great bodily harm to the victim.

¶ 16    The defendant alternatively argues that defense counsel was ineffective for failing to request a jury instruction on the lesser-included offense of battery. Claims of ineffective assistance are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), adopted in Illinois in *People v. Albanese*, 104 Ill. 2d 504 (1984). In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel's performance was deficient because it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. *Id.* at 687-688. A defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not incompetence. *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). "[I]t is not necessary to evaluate both prongs of the *Strickland* test if the defendant makes an insufficient showing on one." *People v. Waldrop*, 2025 IL App (5th) 230085-U, ¶ 11.

¶ 17    Strategic decisions made by counsel are entitled to substantial deference. *Id.* The decision whether to request a lesser-included offense instruction is generally considered a matter of trial strategy. *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994). Illinois courts have repeatedly recognized that an "all-or-nothing" strategy may be reasonable, particularly where the defense

6

seeks complete acquittal rather than risking conviction on a lesser charge. See *People v. Walton*, 378 Ill. App. 3d 580, 589 (2007).

¶ 18    Here, the defense theory challenged both the extent and causation of the victim's injuries. Counsel could reasonably conclude that requesting a lesser-included instruction would undermine that theory and invite a compromise verdict. Based upon a review of the entire record, we find that trial counsel's strategic decision to not submit a lesser included jury instruction was not objectively unreasonable. Accordingly, we need not address whether the defendant was prejudiced.

¶ 19    Lastly, the defendant argues that the trial court's "comment at the beginning of Shelbi's testimony tainted the jury and primed them to believe that [the defendant] was guilty before the trial had barely even begun." The defendant acknowledges that he failed to preserve this issue for review.

¶ 20    It is well settled that failure to offer both a contemporaneous objection and raise the issue in a post-trial motion results in forfeiture. *People v. Johnson*, 218 Ill. 2d 125, 138 (2005). Forfeited issues can only be reviewed if a defendant can establish plain error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The defendant has requested review under both first and second prong plain error.

¶ 21    Under the first-prong of the plain error doctrine, the defendant bears the burden of establishing that a clear or obvious error occurred and the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Under the second prong, the defendant bears the burden of persuading the court that the alleged error was so serious that it denied a substantial right, such as the right to a fair trial by an impartial trier of fact. *Id.* at 613-614. The first step is determining whether a clear or obvious error occurred. *Id.*

¶ 22    A trial court must conduct itself in a fair and impartial manner, and the court may not show bias or prejudice against either party. *People v. Moore*, 2023 IL App (1st) 211421, ¶ 96. A trial court is presumed to be impartial, and it is the burden of the party challenging the court's impartiality to overcome that presumption. *People v. Romero*, 2018 IL App (1st) 143132, ¶ 96. The allegations of judicial bias or prejudice are viewed in context and the allegations are evaluated in terms of the trial court's specific reaction to the events taking place. *Id.* To show bias, a defendant must "demonstrate that the judge displayed 'active personal animosity, hostility, ill will, or distrust toward the defendant.' " *Id.* (quoting *People v. Shelton*, 401 Ill. App. 3d 564, 583 (2010).

¶ 23    A trial court has wide discretion in the conduct of trial but must not make comments or insinuations, by word or conduct, indicative of an opinion on the credibility of a witness or argument of counsel. *People v. Heidorn*, 114 Ill. App. 3d 933, 936 (1983). For comments by a trial judge to constitute reversible error, the defendant must show that the remarks were prejudicial and that he or she was harmed by the comments. *Id*. at 937. Trial judges retain broad discretion to control the proceedings and ensure that testimony is audible and comprehensible. *People v. Sanders*, 2012 IL App (1st) 102040, ¶ 27.

¶ 24    Here, the trial court's random comment to a witness at the beginning of her testimony, though ill-advised, did not reference the defendant's guilt, did not comment on the evidence, and did not direct the jury toward any particular conclusion. On multiple occasions, the trial court admonished the jury that what it said was not evidence. The defendant's assertion that the trial court's comment caused the jury to conclude that the defendant was guilty is conjecture. We find that the evidence was not closely balanced, and the defendant failed to show that the trial court's comment affected the outcome of the trial or undermined the fairness of the proceedings.

¶ 25                        III. CONCLUSION

¶ 26    For the above reasons, the defendant's convictions are affirmed.


¶ 27    Affirmed.